Katherine WALTER, an individual, aka
Pearl Beach, dba Pearl Beach,
Plaintiff–Appellant,

v.

MATTEL, INC., a Delaware
corporation, Defendant–
Appellee.

No. 98–56801

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 3, 2000.

Decided April 26, 2000.

Paul A. Larsen, Milam & Larsen, Pasadena, California, for the plaintiff-appellant.

Adrian Pruetz, Quinn, Emanuel, Urquhart, Oliver & Hedges, Los Angeles, California, for the defendant-appellee.

Before: REINHARDT and O'SCANNLAIN, Circuit Judges, and SCHWARZER,* Senior District Judge.

SCHWARZER, Senior District Judge:

Mattel, Inc., produces and markets, among other products, the well-known line of Barbie dolls to which it added in 1998 the "Pearl Beach Barbie." Unbeknownst to Mattel, Pearl Beach was the trade name under which plaintiff Katherine Walter had done business as a commercial illustrator since 1978. Having learned of Pearl Beach Barbie, plaintiff brought this action alleging misappropriation of her trade name and marks in violation of the Lanham Act and state unfair competition law. Her case presents the reverse of the usual trademark infringement case in which the well-known senior mark sues the obscure junior mark to prevent a free ride on the senior's good will. Instead, it is the little-known senior mark who seeks the protection of the Lanham Act, fearing that customers will think that she is associated with the more prominent junior mark. The district court entered judgment for Mattel, and we affirm.

## FACTS

Since 1978, plaintiff Katherine Walter has done business as Pearl Beach, displaying the moniker alongside a small shell and pearl logo on her business cards, her advertisements, and her promotional postcards. Her business is to illustrate advertisements, brochures, and product packaging for her customers, who are all sophisticated purchasers of commercial art. In 1979, she filed a fictitious business name statement with the Los Angeles County Clerk's Office for "Pearl Beach," but it expired in 1984, and she never attempted to renew it nor does she hold federal or state trademark registrations for her trade name.

Defendant Mattel, a well-known manufacturer of a variety of products, has marketed the popular line of Barbie dolls since 1959. Mattel's Barbie line, which has expanded over the years, includes an annual "pool and beach" doll. Past "pool and beach" Barbies have included "Tropical Splash Barbie," "Sparkle Beach Barbie," and "Sun Jewel Barbie." The target market for this line is girls aged three to ten. In mid–1996, Mattel's designer, Cassidy Beal Park, conducted the initial research for the 1998 doll and discovered pearl jewelry was a popular trend among young girls. Since she thought pearls had a natural association with beaches, she created the name "Pearl Beach Barbie" for the 1998 doll. Park testified that when she brainstormed the name, she had never heard of Katherine Walter or a commercial artist named Pearl Beach. Mattel conducted a trademark search and, finding no conflicting uses, settled on "Pearl Beach Barbie" for the 1998 "pool and beach" Barbie. It was sold from December 1997 to December 1998 in large retail toy and discount stores, packaged in the distinctive hot pink Barbie box bearing the Barbie and Mattel logos. The box had "Pearl Beach Barbie" in a sandy print with a

---

* The Honorable William W Schwarzer, Senior District Judge for the Northern District of California, sitting by designation.

large asymmetrical shell in the background. Mattel ran one television advertisement for the doll in Spring 1998, targeting young girls.

On March 23, 1998, plaintiff brought this action, alleging (1) false designation of origin and false description under the Lanham Act, 15 U.S.C. § 1125(a), (2) common-law unfair competition, and (3) statutory unfair competition under California Business & Professions Code section 17200. Cal. Bus. & Prof.Code § 17200 (West 2000).[1] At the end of plaintiff's case at a bench trial, the court granted Mattel's motion under Federal Rule of Civil Procedure 52(c) and entered judgment for Mattel, holding that plaintiff failed to prove a likelihood of reverse confusion. *See Walter v. Mattel*, 31 F.Supp.2d 751 (C.D.Cal.1998).

## DISCUSSION

Section 43(a) of the Lanham Act states in relevant part:

> Any person who, on or in connection with any goods ... uses in commerce any word, term, name, symbol ... or any false designation of origin ... which (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person ... shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).

Plaintiff contends that Mattel's use of the name Pearl Beach Barbie and its product packaging creates the perception of a business relationship between plaintiff and Mattel when no such relationship exists. She focuses on the text of section 43(a) providing for liability when the use of a trade name "is likely to cause confusion ... as to the affiliation, connection, or

association of such person with another person." Fearing that the market power of a large firm may oppress the intellectual property rights of her small operation, she claims reverse confusion, i.e., that her customers will be confused as to her relationship to Mattel, the junior mark. We have recognized claims for reverse confusion to protect the small senior user from losing control over its identity in "the rising tide of publicity associated with the junior mark." *Dreamwerks Prod. Group Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998).

Plaintiff argues first that the district court erroneously limited Lanham Act liability to confusion of source. The argument misconstrues and distorts the court's ruling. While the court rejected plaintiff's proposed "somehow associated with" test and mentioned confusion of source, its analysis was expressly based on *Dreamwerks:* " 'The question in such cases is whether consumers doing business with the senior user might mistakenly believe that they are dealing with the junior user.' " *Walter*, 31 F.Supp.2d at 757–58 (quoting *Dreamwerks*, 142 F.3d at 1130). The court concluded that "[p]laintiff must show that ... when sophisticated commercial art purchasers encounter the Plaintiff's illustrations or illustration services in the market place, those customers mistakenly believe that Mattel is the source *or sponsor* of those illustrations or illustration services." *Walter*, 31 F.Supp.2d at 758 (emphasis added). Because we can see no difference in substance, as applied to this case, between "association" and "sponsor," (and indeed in its brief the plaintiff equated the two) we cannot say that the court unfairly narrowed the application of the Lanham Act.

Plaintiff's second argument is that the court applied the wrong legal standard in determining whether likeli-

---

1. We treat the federal and state claims as coextensive for purposes of reviewing the district court's ruling because all of the claims turn on the sufficiency of proof of likelihood of confusion. *See Dreamwerks Prod. Group, Inc. v. SKG Studio*, 142 F.3d 1127, 1129 n. 2 (9th Cir.1998).

hood of confusion exists. The test for false designation under the Lanham Act, as well as the common-law and statutory unfair competition claims, is whether there was a "likelihood of confusion." *See Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir.1994); *Dreamwerks*, 142 F.3d at 1129–30. We review the trial court's determination concerning likelihood of confusion for clear error. *See Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1355 (9th Cir.1985) (en banc). In *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir.1979), we listed eight factors that guide the inquiry: (1) strength of the mark;[2] (2) proximity or relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels; (6) type of goods and degree of purchaser care; (7) intent in selecting mark; and (8) likelihood of expansion.

■ Plaintiff takes issue with the court's application of four of these factors. First, plaintiff argues in substance that her goods and Mattel's are related because plaintiff sells product packaging for toy dolls. The district court correctly rejected plaintiff's "conceptual approach," finding that the parties' respective products are not complementary, not sold to the same class of purchasers, and not similar in use or function. *See Walter*, 31 F.Supp.2d at 759.

Second, addressing the similarity of marks factor, plaintiff reiterates that Mattel's use of its distinctive logo in conjunction with the name Pearl Beach implies that Pearl Beach licensed the product. The appearance of the respective marks, however, negates any similarity. Occasionally, in Walter's materials, the term "Pearl Beach" appeared in plain font either above or below a monochromatic, stylized scallop shell with a pearl at the center of the shell. In contrast, Mattel's packaging depicts a bright pink radial sculpture

clamshell tilted to one side with the words "Pearl Beach" in wavy, sandy-textured script with glittery accents over the name "Barbie" (or "Friend of Barbie"). The term "Pearl Beach" in Mattel's products never appears alone; rather, it is invariably accompanied by a reference to Barbie, which is clearly the "salient part of the mark indicative of the product's origin." *Sleekcraft*, 599 F.2d at 351. In other words, "Barbie" is the dominant part of the "Pearl Beach Barbie" mark. Accordingly, the district court correctly concluded that plaintiff's own distinctive logo is not similar in appearance to Mattel's packaging of its Pearl Beach products.

■ Third, plaintiff argues that the district court disregarded evidence of actual confusion. Since "[a]ttestations from persons in close association and intimate contact with [the senior user] do not reflect the views of the purchasing public," *Self–Realization Fellowship Church v. Ananda Church of Self–Realization*, 59 F.3d 902, 910 (9th Cir.1995) (citation omitted), the district court correctly found plaintiff's evidence of actual confusion from acquaintances, friends, and family insufficient. *See Walter*, 31 F.Supp.2d at 760.

Fourth, plaintiff argues that because two of Mattel's employees who never worked on Pearl Beach Barbie had met plaintiff, we should impute that information to Mattel and hold that Mattel's failure to investigate satisfies the intent factor. The district court correctly rejected the argument after finding that Mattel had conducted a reasonable investigation into existing uses of the name "Pearl Beach." *See id.* at 761–62.

In the end, plaintiff's arguments are peripheral at best. The heart of the matter is whether plaintiff established a likelihood of confusion. The court found:

> mark because the issue is whether the junior mark is so strong as to overtake the senior mark. *See Dreamwerks*, 142 F.3d at 1130 n. 5. Misapplication of this factor does not affect the outcome of this case.

**2.** The district court found plaintiff's mark to be strong, a finding which plaintiff does not challenge. *See Walter*, 31 F.Supp.2d at 759. In a reverse confusion case, however, the inquiry focuses on the strength of the junior

If there is any confusion in this case, it occurs when Plaintiff's customers encounter Pearl Beach Barbie in a toy store, not when commercial art buyers encounter Plaintiff's work in the relevant market place.... [F]or sophisticated purchasers of commercial art to believe that Mattel would display Plaintiff's name so prominently, even if it had used her illustrations on the package, would not be reasonable. The Court is not convinced that the holder of such a belief could be considered "a reasonable consumer," and thus Plaintiff has not, indeed cannot, show the type of confusion she must to properly prove a likelihood of reverse confusion.

*Id.* at 758.

· We conclude that the court's findings were not clearly erroneous.

AFFIRMED.