**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SURFVIVOR MEDIA, INC.; PETER S.
DEPTULA,

       *Plaintiffs-Appellants,*

       v.

SURVIVOR PRODUCTIONS; CBS
BROADCASTING INC.; CBS
WORLDWIDE, INC.; WPC BRANDS,
INC.,

       *Defendants-Appellees.*

No. 02-17064

D.C. No.
CV-01-00509-LEK

OPINION

Appeal from the United States District Court
for the District of Hawaii
Leslie E. Kobayashi, Magistrate Judge, Presiding[1]

Argued May 4, 2004
Submitted May 14, 2004
Honolulu, Hawaii

Filed May 4, 2005

Before: Jerome Farris, John T. Noonan, and
Johnnie B. Rawlinson, Circuit Judges.

Opinion by Judge Rawlinson

---

[1]The parties consented to trial before a magistrate judge.

**COUNSEL**

Paul Maki, Honolulu, Hawaii, for the plaintiffs-appellants.

Andrew M. White, White O'Connor Curry & Avanzado LLP, Los Angeles, California, for the defendants-appellees.

**OPINION**

RAWLINSON, Circuit Judge:

Plaintiffs-Appellants Surfvivor Media, Inc., and Peter S. Deptula (collectively Surfvivor or Deptula) appeal the grant of summary judgment in favor of Defendants-Appellees Survivor Productions, L.L.C., *et al.* (collectively *Survivor*), on Surfvivor's federal and state trademark infringement claims. Surfvivor also challenges the magistrate judge's ruling limit-

ing discovery to allow examination of only certain Survivor goods.

Because no material issue of fact was raised reflecting confusion between the marks, we affirm the entry of summary judgment in favor of *Survivor*. We also hold that the discovery rulings were well within the bounds of the court's discretion.

## I.  FACTUAL & PROCEDURAL BACKGROUND

### A.  Factual Background

#### 1.  Plaintiffs-Appellants and the Surfvivor Mark

Deptula holds three federal trademarks for the mark "Surfvivor," an amalgamation of the words "surf" and "survivor." Deptula has adorned the majority of his Hawaiian beach-themed products, ranging from sunscreen, to t-shirts, to surfboards, with that mark. Of these products, approximately thirty to fifty percent of Plaintiff's wares are emblazoned with the Surfvivor mark alone. The remaining wares sport a tiny Surfvivor mark along with a third-party logo, such as a college insignia.

Visually, the Surfvivor mark consists of the term "Surfvivor" in block or cursive writing, often accompanied by a stylized graphic, such as a sun or a surfer. Deptala has been using this mark for several years and has advertised his wares on local television and radio shows, on his website, and at local trade shows. Surfvivor goods are primarily sold to Hawaiian consumers through the local university, a chain of drugstores, military exchanges, and Hawaiian branches of major retailers. Deptula would like to expand Surfvivor's out-of-state presence, but has not made any firm plans to do so.

#### 2.  Defendants-Appellees and the Survivor Mark

Several years after Deptula coined the "Surfvivor" name, the Defendants-Appellees began broadcasting a reality televi-

sion show, *Survivor*, involving a cast that must survive in extreme outdoor conditions. The show has been a viewer favorite for several years.

*Survivor*'s producers created a special *Survivor* logo for advertising and marketing purposes. As with the Surfvivor mark, the *Survivor* mark is emblazoned on a wide range of consumer merchandise, including t-shirts, shorts, and hats. The *Survivor* mark consists of the word "Survivor" in block script, and is often accompanied by the words "outwit[,] out-play[, and] outlast," or is superimposed on a stylized graphic suggesting the location of a particular series.

*Survivor*'s producers acknowledge awareness of Deptula's mark.

### 3.  Evidence of Actual Confusion

After *Survivor* aired, Deptula encountered a few people who wondered whether his business was sponsored by *Survivor*. One retailer and one customer mistook *Survivor* sun-screen for Deptula's product, and one trade show attendee thought that Deptula's business was endorsed by *Survivor's* producers.

*Survivor* never received any complaints from confused cus-tomers, and a survey commissioned by *Survivor* revealed that fewer than two percent of four hundred and two sunscreen purchasers were confused by the two marks. None of Dep-tula's customers ever returned any Surfvivor goods because of a mistaken belief that the goods they purchased were pro-duced or endorsed by *Survivor*. No merchant stopped doing business with Deptula on account of confusion between the product lines.

### B.  Procedural Background

Deptula filed suit against *Survivor* for trademark infringe-ment. During the course of pretrial litigation, Deptula peti-

tioned the court for an order compelling discovery of any *Survivor* goods or services beyond "t-shirts, sunscreen and lipbalm." In response, the court limited discovery to *Survivor* t-shirts, sunscreen and lip balm, concluding that any other evidence would be irrelevant.

*Survivor* subsequently moved for summary judgment, which was granted on the basis that Deptula failed to present sufficient evidence to prove one of the elements of a trademark infringement claim — whether the marks are similar enough to create a "likelihood of confusion." Because Deptula's state law claims relied on the same likelihood of confusion standard as Deptula's federal claim, the state law claims were also dismissed. Deptula filed a timely appeal.

## II.  STANDARDS OF REVIEW

The decision to grant summary judgment in a trademark infringement claim is reviewed *de novo,* and all reasonable inferences are to be drawn in favor of the non-moving party. *See Dreamwerks Prod. Group, Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998). We may affirm on any basis finding support in the record. *Commonwealth of the Northern Mariana Islands v. United States,* 399 F.3d 1057, 1060 (9th Cir. 2005). Although disfavored in trademark infringement cases, summary judgment may be entered when no genuine issue of material fact exists. *See Thane Int'l, Inc. v. Trek Bicycle Corp.,* 305 F.3d 894, 901-02 (9th Cir. 2002).

Discovery rulings are reviewed for an abuse of discretion. *See Garneau v. City of Seattle*, 147 F.3d 802, 812 (9th Cir. 1998). This standard also applies to rulings regarding the relevance of evidence.[2] *See id.*

---

[2]Deptula contends that in *Cacique, Inc. v. Robert Reiser & Co., Inc.*, 169 F.3d 619, 622 (9th Cir. 1999), we held that a denial of discovery on relevancy grounds involves a question of law reviewed *de novo*. Deptula posits that determining the relevance of the evidence in a trademark

## III.   ANALYSIS

[1] Deptula asserts infringement claims under the Lanham Act, 15 U.S.C. § 1114, and related state law claims. A successful trademark infringement claim under the Lanham Act requires a showing that the claimant holds a protectable mark, and that the alleged infringer's imitating mark is similar enough to "cause confusion, or to cause mistake, or to deceive." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 125 S. Ct. 542, 547 (2004) (citation omitted). The test for "likelihood of confusion" requires the factfinder to determine whether a "reasonably prudent consumer in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." *Dreamwerks*, 142 F.3d at 1129 (internal quotation marks omitted).

We have recognized two distinct claims in the trademark infringement context: forward confusion and reverse confusion. *See id.* at 1130 n.5. Forward confusion occurs when consumers believe that goods bearing the junior mark came from, or were sponsored by, the senior mark holder. *See id*. at 1129-30 & n.5. To avoid summary judgment on a forward confusion claim, Deptula must raise a material question of fact regarding whether the buying public thought that Surfvivor was either the source of, or was sponsoring, the television show and its product line. By contrast, reverse confusion occurs when consumers dealing with the senior mark holder believe that they are doing business with the junior one. *See id.* To survive a summary judgment motion on a reverse confusion claim, a question of material fact would have to be

infringement case requires an interpretation of whether his and Survivor's goods are "related," which he regards as a legal issue. We disagree. *Cacique* required *de novo* review because the relevance of the evidence in that case depended upon an interpretation of state law. *See Cacique*, 169 F.3d at 622. The district court's interpretation of state law is a question of law reviewed *de novo*. *See Gibson v. County of Riverside*, 132 F.3d 1311, 1312 (9th Cir. 1997).

raised as to whether consumers believed that *Survivor* was either the source of, or was a sponsor of, Deptula's wares. We address each theory in turn, and then discuss the disposition of Deptula's state law claims, and motion to compel discovery.

## A. Forward Confusion Claim

We need not determine whether Deptula raised a material issue of fact on the forward confusion claim. Deptula may not proceed on this theory because he failed to reference it in his complaint. *See Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 929-30 (9th Cir. 2004) (upholding dismissal of a claim where the complaint contained no facts in support of that claim). Deptula did not seek an opportunity to amend his complaint, relying instead on his argument that he sufficiently pled a claim for forward confusion. Accordingly, Deptula has no cognizable "forward confusion" claim to review on appeal. *See id.*

## B. Reverse Confusion Claim

[2] To analyze likelihood of confusion, we consider the following eight factors, generally referred to as the *Sleekcraft* factors:

(1)   strength of the mark(s);

(2)   relatedness of the goods;

(3)   similarity of the marks;

(4)   evidence of actual confusion;

(5)   marketing channels;

(6)   degree of consumer care;

(7)    the defendants' intent;

(8)    likelihood of expansion.

*Dreamwerks*, 142 F.3d at 1129 (citing to *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49) (9th Cir. 1979) ("*Sleekcraft*")). The test is a fluid one and the plaintiff need not satisfy every factor, provided that strong showings are made with respect to some of them. *See id.* at 1129-30, 1132 (allowing case to proceed past summary judgment where the plaintiff overwhelmingly satisfied three *Sleekcraft* factors).

### 1.    Strength of the Mark(s)

### i.    The Strength of the Senior (Surfvivor) Mark

The purpose of examining the strength of the plaintiff's mark is to determine the scope of trademark protection to which the mark is entitled.[3] *Entrepreneur Media, Inc. v.*

---

[3]We take this opportunity to clarify an apparent inconsistency in our caselaw. The district court did not examine the strength of the senior Surf-vivor mark, relying on our holding in *Walter v. Mattel, Inc.*, 210 F.3d 1108, 1111 n.2 (9th Cir. 2000), that "the inquiry [in reverse confusion cases] focuses on the strength of the junior mark because the issue is whether the junior mark is so strong as to overtake the senior mark." We understand the district court's confusion, as *Walter* could be read to imply that the strength of the plaintiff's senior mark is irrelevant in reverse confusion cases. *See Walter*, 210 F.3d at 1111 n.2.

However, *Walter* contained no express holding regarding the irrelevancy of the senior mark. Accordingly, we adhere to the approach in the case that introduced the reverse confusion concept in this circuit. *Dreamwerks*, 142 F.3d at 1130-31. In *Dreamwerks,* we explicitly analyzed the strength of the lesser known senior mark. *See id.* (describing the senior mark as an "arbitrary" mark worthy of strong protection)*; see also Cohn v. Petsmart, Inc.*, 281 F.3d 837, 842 n.6 (9th Cir. 2002) (recognizing the propriety of analyzing the strength of the lesser known senior mark). The language in *Walter* that the inquiry focuses on the junior mark does not mean that inquiry into the strength of the senior mark is completely foregone.

*Smith,* 279 F.3d 1135, 1141 (9th Cir. 2002). The more unique the mark, the greater the degree of protection. *See id.*

Trademarks are divided into five categories. The two strongest sets of marks are "arbitrary" and "fanciful" marks, which trigger the highest degree of trademark protection. *See id.* at 1141. "Arbitrary" marks are common words that have no connection with the actual product — for example, "Dutch Boy" paint. *Dreamwerks*, 142 F.3d at 1130 n.7. "Fanciful" marks consist of "coined phrases" that also have no commonly known connection with the product at hand. *See id.* Examples of fanciful marks include "Kodak" cameras or "Aveda" skin care products. *See Dreamwerks*, 142 F.3d at 1130 n.7; *see also Aveda Corp. v. Evita Mktg., Inc.*, 706 F. Supp. 1419, 1428 (D. Minn. 1989).

"Suggestive" marks do not "describe the product's features but suggest[ ] them." *Kendall-Jackson Winery v. E. & J. Gallo Winery*, 150 F.3d 1042, 1047 n.8 (9th Cir. 1998) (emphasis omitted). The exercise of some imagination is required to associate a suggestive mark with the product. *See id.* Examples include "Slickcraft" boats or "Air Care," for a service that maintains medical equipment for administering oxygen. *See Sleekcraft,* 599 F.2d at 349; *see also Kendall-Jackson Winery*, 150 F.3d at 1047 n.8 (citation and emphases omitted).

The fourth category of marks is referred to as "descriptive." *Kendall-Jackson Winery*, 150 F.3d at 1047. These marks define a particular characteristic of the product in a way that does not require any exercise of the imagination. *See id.* at 1047 n.8. An example of a descriptive mark is "Honey Roasted" for nuts roasted with honey. *See id.* at 1047 n.8. Because these marks merely describe a characteristic of the product, they do not receive any trademark protection unless they acquire sufficient "secondary meaning" to create an association between the mark and the product. *See id.* at 1047.

The final category of marks consists of "generic" marks, which describe the product in its entirety, and which are not entitled to trademark protection. *See id.* at 1047 & n.8. Examples include "Liquid controls" for equipment that dispenses liquid, or "Multistate Bar Examination" for a bar examination that may be taken across multiple states. *See id.* at 1047 n.8; *see also Nat'l Conf. of Bar Examiners v. Multistate Legal Stud., Inc.*, 692 F.2d 478, 488 (7th Cir. 1983).

Because "Surfvivor" is a coined term, Deptula contends that it should be treated as a fanciful mark. However, the mere fact that a mark consists of a coined term does not automatically render that mark fanciful. *See Interstellar Starship Servs. Ltd. v. Epix, Inc.*, 184 F.3d 1107, 1111 (9th Cir. 1999) (determining that the coined phrase "EPIX" for electronic pictures should not automatically be considered an arbitrary [or fanciful] mark). Fanciful marks have no commonly known connotation to the product at hand. *See Dreamwerks*, 142 F.3d at 1130 n.7 ("Kodak" cameras). By contrast, the term "Surfvivor" is highly evocative of the company's beach-related products.

**[3]** However, neither is Surfvivor a descriptive or generic mark. Since the term "Surfvivor" requires some imagination to associate it with the company's beach-related goods, it qualifies as a suggestive mark worthy of some protection. *See Entrepreneur Media,* 279 F.3d at 1142 & n.3.

**[4]** Our determination that "Surfvivor" is a suggestive mark weighs in favor of Deptula. *See Dreamwerks*, 142 F.3d at 1130.

### ii.   The Strength of the Junior (*Survivor*) Mark

**[5]** The *Survivor* series has high public recognition and the producers heavily advertise the show. These circumstances increase the strength of a mark and also weigh in favor of

Deptula. *See Cohn v. Petsmart*, 281 F.3d 837, 841 (9th Cir. 2002) (describing the effect of a strong junior mark).

## 2.   Relatedness of the Goods

**[6]** The standard for deciding whether the parties' goods or services are "related" is whether customers are "likely to associate" the two product lines. *Dreamwerks*, 142 F.3d at 1131. We must also consider whether the buying public could reasonably conclude that the products came from the same source. *See Sleekcraft*, 599 F.2d at 348 n.10. In this case, although both parties portray an outdoor theme, there is no material evidence in the record that customers are likely to associate the two products or conclude that the products come from the same source. In fact, the evidence indicates that only one retailer and one customer may have concluded that the products had a common source. Resolution of this *Sleekcraft* factor favors *Survivor*.

## 3.   Similarity of the Marks

In considering the degree of similarity between the two marks, courts should analyze each mark within the context of other identifying features. *See Entrepreneur Media*, 279 F.3d at 1144 (suggesting the examination of marks in their entirety). We also ask whether the marks are similar in sight, sound, and meaning. *See id.*

The visual subfactor favors *Survivor*. *Survivor* makes a strong argument that because its mark is usually accompanied by the distinctive slogan "outwit[,] outplay[,] outlast," or a stylized graphic, the marks are dissimilar. *Cf. Pignons S. A. de MeCanique de Precision v. Polaroid Corp.*, 657 F.2d 482, 487 (9th Cir. 1981) (recognizing that when a challenged mark is accompanied by the logo of the manufacturer, confusion is unlikely).

The "sound" subfactor favors Deptula. Phonetically, "Survivor" and "Surfvivor" are nearly identical. However, the

"meaning" subfactor slightly favors *Survivor*. The word "*survivor*" evokes its commonly understood meaning: one who "continue[s] to exist or live." *Merriam-Webster's Collegiate Dictionary,* 10th ed. 1187 (1999). However "surfvivor," a coined term, connotes a more precise reference to surfing.

**[7]** Examining the marks in their relative entirety does not reflect the existence of a material issue of fact regarding the similarity of the marks. The subfactors do not weigh in favor of either party.

### 4.  Evidence of Actual Confusion

**[8]** Evidence of actual confusion by consumers is strong evidence of likelihood of confusion. *See Rodeo Collection v. West Seventh,* 812 F.2d 1215, 1219 (9th Cir. 1987). In analyzing this factor, we may consider whether merchants and non-purchasing members of the public, as well as actual consumers, were confused. *See Americana Trad. Inc. v. Ross Berrie & Co.*, 966 F.2d 1284, 1289 (9th Cir. 1992); *see also Karl Storz Endoscopy-America, Inc. v. Surgical Tech., Inc.*, 285 F.3d 848, 854 (9th Cir. 2002).

**[9]** As noted above, there is scant evidence of actual confusion in the record. A single retailer and a single customer mistook one *Survivor* product as Deptula's. A survey commissioned by *Survivor* showed an absence of significant confusion. *Cf. Playboy Enterprises v. Netscape Communications,* 354 F.3d 1020, 1026 (9th Cir. 2004) ("actual confusion among significant numbers of consumers provides strong support for the likelihood of confusion") (footnote reference omitted). This factor favors *Survivor*.

### 5.  Marketing Channels

**[10]** We must determine whether the parties distribute their goods in the same marketing channels. *See Entrepreneur Media*, 279 F.3d at 1151. We agree with the district court that

there is minor overlap within local Hawaiian distribution channels. For example, both *Survivor* and Surfvivor merchandise are sold at Hawaiian J.C. Penny stores. This factor slightly favors Deptula.

### 6.   Degree of Consumer Care

In analyzing the degree of care that a consumer might exercise in purchasing the parties' goods, the question is whether a "reasonably prudent consumer" would take the time to distinguish between the two product lines. *Brookfield Comm., Inc. v. West Coast Entm't Group,* 174 F.3d 1036, 1060 (9th Cir. 1999). Our analysis of this factor is complicated by the fact that the parties sell a wide range of goods at different prices.

No clear standard exists for analyzing moderately priced goods, such as non-designer clothing. *Compare Saks & Co. v. Hill*, 843 F. Supp. 620, 624 (S.D. Cal. 1993) (noting that customers exercise considerable care in purchasing clothing); and *Surf Line Hawaii Ltd. v. Ahakuelo,* 13 U.S.P.Q. 2d 1975, 1979 (D. Hawaii 1989) (commenting that customers do not exhibit much care in purchasing goods such as t-shirts).

**[11]** With respect to small, inexpensive goods such as sunscreen, the consumer is likely to exercise very little care. *See Brookfield Comm.*, 174 F.3d at 1060. Thus, with respect to small items, the "degree of consumer care" factor favors Deptula. However, as to the other items, the "degree of consumer care" factor does not favor either party.

### 7.   Defendants' Intent

**[12]** *Survivor*'s producers acknowledge being aware of the Surfvivor mark before airing their show, but contend that they lacked intent to infringe upon that mark. Even if true, that fact is not dispositive. "[A]bsence of malice is no defense to trademark infringement[.]" *Petsmart*, 281 F.3d at 843 (citation

omitted). Further, "where the alleged infringer adopted his mark with knowledge, actual or constructive, that it was another's trademark," resolution of this factor favors Surfvivor. *Brookfield Comm.,* 174 F.3d at 1059.

### 8.   Likelihood of Expansion

**[13]** To resolve this factor, we must determine whether existence of the allegedly infringing mark is hindering the plaintiff's expansion plans. *See Entrepreneur Media*, 279 F.3d at 1152. Deptula has presented no specific evidence related to this factor. Although Deptula expressed interest in expanding his product line, mere speculation is not evidence. *See Paladin Assoc., Inc. v. Montana Power Co.,* 328 F.3d 1145, 1161 (9th Cir. 2003). Deptula's complete inability to adduce any concrete evidence of expansion plans tilts this factor in favor of *Survivor. See Entrepreneur Media*, 279 F.3d at 1152.

### 9.   Overall Analysis of the *Sleekcraft* Factors

**[14]** The distribution of the *Sleekcraft* factors does not raise a material issue of fact regarding likelihood of confusion. *Cf. Dreamwerks,* 142 F.3d at 1130-32 (holding summary judgment inappropriate where the Plaintiff satisfied three *Sleekcraft* factors and the other factors carried "little weight").[4]

### C.   State Law Claims

**[15]** Deptula raised a number of state law infringement and unfair competition claims pursuant to Hawaii statute and common law. The infringement claims are governed by a "likelihood of confusion" standard identical to the *Sleekcraft* test.

---

[4]Although *Survivor* did not seek summary judgment on this basis and the district court did not address it, we also note the lack of any evidence in the record that Surfvivor suffered any damages as a result of the asserted infringement. *See Lindy Pen Co., Inc. v. Bic Pen Corp.,* 982 F.2d 1400, 1407 (9th Cir. 1993) ("[a] plaintiff must prove both the fact and the amount of damage") (citation omitted).

*See Carrington v. Sears, Roebuck & Co.*, 5 Haw. App. 194, 198-200 (1984) (referring to H.R.S. § 482-4(a) and Hawaii common-law). Therefore, the state reverse confusion claim suffers the same fate as the federal infringement claim. *Cf. Americana Trad. Inc.*, 966 F.2d at 1290 n.1 (permitting state law claims to proceed where they mirrored the federal claims).

Deptula provided no legal support for his common-law "unfair practices" claim. Rather, Deptula's citations referenced only state law infringement claims. Because Deptula did not support his common-law unfair practices claim by citation to governing law, he has waived the claim. *See Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1069 n.18 (9th Cir. 2000) (concluding that failure to provide any legal argument in support of a contention waived that argument).

## D. Discovery Order

The magistrate judge limited discovery in this case to information regarding t-shirts, sunscreen and lip balm, on the ground that any other discovery would be irrelevant. The magistrate judge, who was intimately familiar with the details of this case, considered the letter briefs that were filed by the parties on this issue and the discovery that had been conducted by the parties. In response to Interrogatories, Deptula explicitly identified t-shirts, sunscreen and lip balm as the infringing products.

**[16]** Litigants "may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). Relevant information for purposes of discovery is information "reasonably calculated to lead to the discovery of admissible evidence." *Brown Bag Software v. Symantec Corp.,* 960 F.2d 1465, 1470 (9th Cir. 1992) (citation omitted). District courts have broad discretion in determining relevancy for discovery purposes. *See Hallett v. Morgan,* 296 F.3d 732, 751 (9th Cir. 2002).

**[17]** The issue in this case is whether *Survivor's* related products infringe on Surfvivor's senior mark. Surfvivor itself identified the related infringing products as t-shirts, sunscreen and lip balm. The magistrate judge acted well within her discretion in limiting discovery to those matters Surfvivor itself had identified as the related infringing products.

## IV.   CONCLUSION

Application of the *Sleekcraft* factors to the facts of this case does not raise a material issue of fact regarding actual confusion between the Surfvivor and *Survivor* marks. The trial court's entry of summary judgment in favor of *Survivor* was appropriate, and its discovery rulings were well within its discretionary boundaries.

Because Deptula did not raise a forward confusion claim in his complaint, and did not seek leave to amend, his forward confusion claim was not preserved.

**AFFIRMED. Each party is to bear its costs on appeal.**