**M2 SOFTWARE INC., a Delaware corporation, Plaintiff—Appellant,**

v.

**M2 COMMUNICATIONS, L.L.C., a limited liability company; Jeff Moseley, an individual; Gaylord Entertainment Inc., a corporation, Defendants—Appellees.**

No. 03–56602.

D.C. No. CV–02–01588–AHM.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 7, 2005.

Decided Sept. 12, 2005.

Toula Arvanitis–Dalpe, Law Office of toula Arvanitis–Dalpe, Anaheim Hills, CA, for Plaintiff–Appellant.

Denise M. Demory, De Mory & Grigg P.C., San Francisco, CA, David K. Caplan, Keats McFarland & Wilson LLP, Beverly Hills, CA, Mark Hayes Wildasin, Waller Lansden Dortch & Davis, LLP, Nashville, TN, for Defendants–Appellees.

Before PREGERSON, CANBY, and BEEZER, Circuit Judges.

### MEMORANDUM *

Plaintiff M2 Software appeals the district court's grant of summary judgment to defendant M2 Communications on all of M2 Software's claims under state and federal trademark and unfair competition law. The district court held that there is no likelihood of confusion between M2 Communications' Christian music products and M2 Software's music products and music business services. M2 Software also appeals the dismissal of defendants Gaylord Entertainment and Jeff Moseley for lack of personal jurisdiction.

The parties are familiar with the facts and procedural history of this case, so we do not repeat them here.

### I

We review a grant of summary judgment de novo. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 630 (9th Cir.2005).

To determine whether there is a likelihood of confusion, we consider the following eight non-exhaustive *Sleekcraft* factors: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *Sleekcraft*, 599 F.2d at 348–349.

■ The first three factors weigh in favor of M2 Software. Plaintiff's M2 mark is arbitrary or fanciful, making it inherently strong. *See M2 Software, Inc. v. Mada-*

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

*cy Entm't*, 421 F.3d 1073, 1080–81 (9th Cir.2005) ("[A] lack of commercial strength cannot diminish the overall strength of a conceptually strong mark so as to render it undeserving of protection."). Because both companies distribute music and CDs, the proximity of goods factor tilts in favor of M2 Software, "but only slightly because the genres of the music CDs are very significantly different." *Id.*, 421 F.3d at 1081–82. The marks "M2" and "M2.0" are almost identical when written or spoken, even though the two logos are slightly different.

The rest of the factors favor M2 Communications. The parties' products are within the same industry but in widely different segments. The products do not compete with each other, nor are they used by the same class of users. The products are each targeted towards a certain niche of the music business, and the niches have very little overlap. Because M2 Communications promotes its products only in Christian magazines and at Christian trade shows, the parties neither advertise nor distribute their products in the same channels. The possibility that the "sophisticated" purchasers of M2 Software's record label music management database services would confuse those products with M2 Communications' Christian music records is "almost nil." *See id.* at 1083–084. M2 Software provided no evidence of actual confusion, nor did it show any present intentions by either party to expand into the other's product line. M2 Communications believed that its own mark did not infringe M2 Software's trademark rights because M2 Software's products did not consist of Christian CDs, tapes, or musical content. *See id.* at 1084–85 (noting that defendant believed it could "'carve out' a non-infringing mark" and holding that intent factor weighed in favor of defendant).

"To prevail on the ultimate question toward which the *Sleekcraft* analysis is directed—the likelihood of confusion of consumers—M2 Software must show sufficient evidence to permit a rational trier of fact to find that confusion is 'probable,' not merely 'possible.'" *M2 Software*, 421 F.3d at 1085–86 (quoting *Murray v. CNBC*, 86 F.3d 858, 861 (9th Cir. 1996)). In light of *all* of the *Sleekcraft* factors, the district court correctly concluded that no reasonable jury could find a likelihood of confusion between M2 Communications' Christian music products and M2 Software's music products and music business services. Any errors by the district court in assessing the strength of the marks and the proximity of goods were harmless.

"[R]everse confusion occurs when consumers dealing with the senior mark holder believe that they are doing business with the junior one." *Surfvivor Media*, 406 F.3d at 630. In determining whether there is a likelihood of reverse confusion, courts consider the eight *Sleekcraft* factors. *Id.* at 631. For the same reasons as above, the district court correctly determined that there was no likelihood of reverse confusion.

## II

We review de novo an order dismissing parties for lack of personal jurisdiction. *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1128 (9th Cir.2003). Where, as here, the district court decides a motion to dismiss for lack of personal jurisdiction without an evidentiary hearing, "the plaintiff need make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss. That is, the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant." *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir.

2001) (citations and internal quotation marks omitted).

We will attribute the contacts of Word Entertainment to its parent company Gaylord Entertainment for jurisdictional purposes only if Word is Gaylord's alter ago or if Word acts as the general agent for Gaylord. *Id.* at 1134. Gaylord's statements that it acquired the assets of, and later sold, Word as a "division" are consistent with Gaylord's status as an investor and do not on their own imply that Gaylord had sufficient control to render Word a mere instrumentality of Gaylord. *See id.* at 1134–35 (articulating tests to be used in determining if a subsidiary is an alter ego or agent of a parent company for jurisdictional purposes). The sole fact that the president of Creative Content Group is an executive officer of Gaylord does not render Word an alter ego or agent. *Id.* The fact that Gaylord is listed as the technical contact for the website wordentertainment.com is not substantial enough to support general jurisdiction. M2 Software fails to demonstrate facts sufficient to support general jurisdiction over Gaylord Entertainment.

M2 Software also fails to demonstrate facts sufficient to support specific jurisdiction over either Gaylord or Jeff Moseley. "[T]he 'effects' test requires that the plaintiff allege that the defendant has (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Food Co. v. Watts,* 303 F.3d 1104, 1111 (9th Cir.2002). The mere fact that M2 Communications owns Viacom stock is not an "act" that is aimed at California. Jeff Moseley, a corporate officer and the founder of M2 Communications, is protected by the fiduciary shield doctrine, under which "a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person." *Davis v. Metro Prods., Inc.,* 885 F.2d 515, 520 (9th Cir.1989).

## III

We deny M2 Software's request for attorneys' fees.

**AFFIRMED.**