**THIS OPINION IS A
PRECEDENT OF THE TTAB**

Hearing:                                                    Mailed:
April 21, 2009                                              June 9, 2009


**UNITED STATES PATENT AND TRADEMARK OFFICE**
_____

**Trademark Trial and Appeal Board**
_____

In re Dean S. Carlson
_____

Serial No. 78752616
_____

Stephen R. Baird and Sharon D. Armstrong of Winthrop &
Weinstine, P.A. for Dean S. Carlson

Amy C. Kean, Trademark Examining Attorney, Law Office 113
(Odette Bonnet, Managing Attorney)
_____

Before Seeherman, Hairston and Mermelstein, Administrative
Trademark Judges.

Opinion by Seeherman, Administrative Trademark Judge:

Dean S. Carlson has appealed from the final refusal of

the trademark examining attorney to register URBANHOUZING

in standard character format for "real estate brokerage;

real estate consultation; and real estate listing."[1]  There

are two issues before us in this appeal:  whether

_____
[1]  Application Serial No. 78752616, filed November 11, 2005,
based on Section 1(a) of the Trademark Act, and asserting first
use and first use in commerce as early as February 2005.

applicant's mark is merely descriptive of his identified services (refusal based on Section 2(e)(1) of the Trademark Act, 15 U.S.C. §1052(e)(1)); and whether applicant's disclaimer of the term URBAN HOUSING is acceptable, or whether it constitutes an impermissible disclaimer of the entire mark.

The appeal has been fully briefed, and applicant and the examining attorney appeared at an oral hearing.[2]

A term is deemed to be merely descriptive of goods or services, within the meaning of Section 2(e)(1) of the Trademark Act, 15 U.S.C. §1052(e)(1), if it forthwith conveys an immediate idea of an ingredient, quality, characteristic, feature, function, purpose or use of the goods or services. In re Abcor Development Corp., 588 F.2d

---

[2] In his briefs applicant has not provided the case cites to United States Patent Quarterly for the federal court cases he has cited. "When cases are cited in a brief, the case citation should include a citation to *The United States Patent Quarterly* (USPQ), if the case has appeared in that publication." TBMP § 801.03 (2d ed., revised 2004).

With his reply brief applicant submitted pages from the guidelines for listings in "urban dictionary," www.urbandictionary.com, the source of the definition of the phrase "in da hizza houze" submitted by the examining attorney. Applicant's submission is untimely and would normally not be considered. If applicant had wished to raise questions about the probative value of the examining attorney's evidence from this source he should have submitted the guidelines during the course of prosecution. (Although the dictionary definition was made of record by the examining attorney with the final Office action, applicant could have submitted the additional webpages with a request for reconsideration.) However, at oral argument the examining attorney stated that she had no objection to this material, and therefore we have treated it as being of record.

2

811, 200 USPQ 215, 217-18 (CCPA 1978). A term need not immediately convey an idea of each and every specific feature of the applicant's goods or services in order to be considered to be merely descriptive; rather, it is sufficient that the term describes one significant attribute, function or property of the goods or services. In re H.U.D.D.L.E., 216 USPQ 358 (TTAB 1982); In re MBAssociates, 180 USPQ 338 (TTAB 1973). Whether a term is merely descriptive is determined not in the abstract, but in relation to the goods or services for which registration is sought, the context in which it is being used on or in connection with the goods or services, and the possible significance that the term would have to the average purchaser of the goods or services because of the manner of its use; that a term may have other meanings in different contexts is not controlling. In re Bright-Crest, Ltd., 204 USPQ 591, 593 (TTAB 1979). In other words, the question is not whether someone presented with only the mark could guess what the goods or services are. Rather, the question is whether someone who knows what the goods or services are will immediately understand the mark as directly conveying information about them. In re Tower Tech Inc., 64 USPQ2d 1314, 1317 (TTAB 2002).

3

We need not reiterate the evidence that the examining attorney has made of record to show that the term "urban housing" is merely descriptive for applicant's services. Applicant has essentially admitted this by his offer of a disclaimer of "urban housing."  That is, applicant has recognized that "urban housing" is a descriptive term and that he is not entitled to exclusive rights to it. "Applicant has made clear and the owners of the [previously cited] application and registration have made clear that none seek exclusive rights in the descriptive phrase URBAN HOUSING."  Response filed June 7, 2007.  However, it is applicant's position that the manner in which his mark is spelled, with the letter "Z" substituted for the letter "S" in housing and the compressing of the two words, URBAN HOUSING, into the single word URBANHOUZING, transforms the descriptive term "urban housing" into an inherently distinctive mark.

We find, first, that the compression of the words URBAN HOUSING into a single term, URBANHOUZING, still conveys the commercial impression of two words.  In other words, consumers would recognize the mark as consisting of the separate elements URBAN and HOUZING.  See In re Cox Enterprises Inc., 82 USPQ2d 1040, 1043 (TTAB 2007) ("THEATL is simply a compressed version of the descriptive term THE

4

ATL without a space between the two words. Without the space, THEATL is equivalent in sound, meaning and impression to THE ATL and is equally descriptive of applicant's goods"); In re Planalytics Inc., 70 USPQ2d 1453 (TTAB 2004) (GASBUYER merely descriptive of providing on-line risk management services in the field of pricing and purchasing decisions for natural gas; the absence of the space does not create a different meaning or perception of the term). The Planalytics decision, 70 USPQ2d at 1455-56, also cited the following cases in which, although a space was deleted between the words, the combined term remained descriptive:

> In re Gould Paper Corp., 834 F.2d 1017, 5 USPQ2d 1110 (Fed. Cir. 1987) (SCREENWIPE generic for a wipe for cleaning television and computer screens); In re Abcor Dev. Corp., 588 F.2d 811, 200 USPQ 215 (CCPA 1978) (GASBADGE at least descriptive for gas monitoring badges; three judges concurred in finding that term was the name of the goods); In re Orleans Wines, Ltd., 196 USPQ 516 (TTAB 1977) (BREADSPRED descriptive for jams and jellies that would be a spread for bread); In re Perkin-Elmer Corp., 174 USPQ 57 (TTAB 1972) (LASERGAGE merely descriptive for interferometers utilizing lasers).

The next question is whether the misspelling of the descriptive word HOUSING as HOUZING changes the meaning or commercial impression of the mark. In general, a mere

misspelling of a word is not sufficient to change a merely descriptive term into an inherently distinctive trademark. See Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315 (1938) (NU-ENAMEL; NU found equivalent of "new"); In re Quik-Print Copy Shops, 616 F.2d 523, 205 USPQ 505, 507 n.9 (CCPA 1980) (QUIK-PRINT held descriptive; "There is no legally significant difference here between 'quik' and 'quick'"); In re Organik Technologies Inc., 41 USPQ2d 1690, 1694 (TTAB 1997) ("ORGANIK, which is the phonetic equivalent of the term 'organic,' is deceptive"); and Hi-Shear Corp. v. National Automotive Parts Association, 152 USPQ 341, 343 (TTAB 1966) (HI-TORQUE "is the phonetic equivalent of the words 'HIGH TORQUE'").

In In re Bayer Aktiengesellschaft, 488 F.2d 960, 82 USPQ2d 1828 (Fed. Cir. 2007), the Court found that ASPIRINA was merely descriptive for analgesic goods, and affirmed the Board's finding that ASPIRINA and aspirin are sufficiently close in appearance, sound, and meaning that "[t]he mere addition of the letter 'A' at the end of the generic term 'aspirin' is simply insufficient to transform ASPIRINA into an inherently distinctive mark for analgesics." 82 USPQ2d at 1831. In that case, the Court held that "[a]dding an 'a' to aspirin results in virtually no distinction with respect to the visual impressions of

6

the terms," and that the meaning of the terms was similar. 82 USPQ2d at 1832.  In the present case, the terms are, if anything, even more similar, because they are also phonetically identical.  The dictionary definition for the word "housing" shows it is pronounced "hou'zĭng."[3]

In determining whether the misspelling of HOUSING in applicant's mark URBANHOUZING makes the mark inherently distinctive, we must consider whether URBANHOUZING will be perceived as the equivalent of URBANHOUSING and, as a secondary point, whether, as applicant argues, the element ZING makes a separate commercial impression.  First, we find that HOUZING will be recognized as a misspelling of the descriptive word HOUSING.  It is, as we have stated, a phonetic equivalent.  Further, the examining attorney has submitted excerpts from blogs/message boards and from a slang dictionary in which what is obviously meant to be the word "housing" is spelled "houzing."  See, for example, a listing of topics, such as Minerals, English Study, Computer, in which "Houzing" is listed as a category, with "Housing in Urbana," "Urbana yellow page" and "Room listing in Urbana" as subtopics/links.  https://netfiles.uiuc.edu.

---

[3]  The American Heritage Dictionary of the English Language, 4th ed. © 2000, made of record with Office action mailed May 18, 2006.

7

See also a comment in an Internet forum that "he was in Newark at a houzing project."  http://www.hondahookup.com. We do not mean to suggest that listings in blogs or even a slang dictionary[4] show that "houzing" is an accepted alternate spelling of "housing" or that this spelling is in common and widespread use.  But these uses indicate either that "housing" may be misspelled as "houzing" or that the writers who deliberately use this spelling view "houzing" as a misspelling or alternate spelling that readers will immediately understand as "housing."

Perhaps most importantly, applicant himself uses "HOUZING" as an alternate version of "housing" in general statements separate and apart from his proposed trademark. On his website he makes such statements as "ALL YOUR HOUZING NEEDS FROM A TO ZING"; "THE TWIN CITIES ULTIMATE URBAN HOUZING LIFESTYLE RESOURCE"; and "Consumer demand for a lifestyle of convenience has revitalized the Urban Houzing Market."  http://urbanhouzing.com.

The next question we must consider is whether the ZING portion of applicant's mark creates a separate commercial impression, such that the mark as a whole has a double entendre, with one meaning that is not merely descriptive.

---

[4]  As noted in footnote 2, the "urban dictionary," www.urbandictionary.com, has a listing for "in da hizza houze."

Applicant argues that because "zing" means "a quality or characteristic that excites the interest, enthusiasm, etc." and "to move or proceed with speed or vitality; zip," "the mark suggests that Applicant's real estate brokerage, consulting and listing services are provided with speed and enthusiasm."  Brief, p. 15.  Applicant has cited In re Grand Metropolitan Foodservice, Inc., 30 USPQ2d 1974 (TTAB 1994) and Surfvivor Media, Inc. v. Survivor Productions, 406 F.3d 625, 74 USPQ2d 1621 (9th Cir. 2005), in support of his position.  The latter decision, however, is distinguishable from the present situation for many reasons.  Most importantly, there was never an issue as to whether the plaintiff's mark, SURFVIVOR, was descriptive of such beach-themed products as sunscreen and t-shirts.  The comments the Court made with respect to the mark were limited to the issue of the strength of the mark in terms of an infringement action, specifically whether the mark as a coined word was fanciful and entitled to the highest degree of trademark protection, or suggestive and worthy of a lesser scope of protection.  In Grand Metropolitan Foodservice, the Board found that applicant's mark

*MufFuns* was not merely descriptive of muffins because it would not be perceived as just a misspelling of a descriptive or generic word, but as

9

having a dual meaning of "fun" as well as of "muffins."
We consider this case to be distinguishable from the
present situation as well, since the way the mark is
depicted the word "fun" is emphasized as a separate word by
the use of the capital "F."  The "Z" in applicant's mark,
because it is not emphasized and would be perceived as only
a misspelling of the descriptive word "housing", does not
project the impression of the separate word "zing."

Applicant has argued that we must look to his
specimens to determine whether the ZING portion of his mark
will make a separate commercial impression.  Applicant
cites In re Hershey, 6 USPQ2d 1470 (TTAB 1988), for that
proposition.  However, Hershey involved a refusal under
Section 2(a) on the ground that the mark was scandalous.
Moreover, the Board did not rely on the specimens in
finding that the mark was not scandalous.  The Board stated
only that the specimens provided further support for its
view that the mark did not have an offensive meaning, the
Board having found that the evidence submitted by the
examining attorney to be "at best marginal to demonstrate
that the mark is a vulgar, slang reference to male
genitalia and would be recognized as such a reference by a
substantial composite of the general public."  Id. at 1471.

Applicant has pointed to no cases in which the courts or this Board have looked to an applicant's specimens to find that a mark was <u>not</u> merely descriptive[5]. On the contrary, the cases we have reviewed are directly contrary to applicant's position.[6] For example, in In re The Place Inc., 76 USPQ2d 1467 (TTAB 2005), applicant sought to register THE GREATEST BAR for restaurant and bar services, arguing that the mark was not merely descriptive because it had a double entendre in that the theme and decor of the restaurant would focus on the greatest people, places and events in Boston history. The Board rejected this argument, stating:

> A mark thus is deemed to be a double entendre only if both meanings are readily apparent *from the mark itself*. If the alleged second meaning of the mark is apparent to purchasers only after they view the mark in the context of the applicant's trade dress, advertising materials or other matter separate from the mark itself, then the mark is not a double entendre.

---

[5] Of course, specimens and promotional material may be used to prove that a mark is merely descriptive, and statements made in them can show that a term describes a feature or characteristic of the goods or services. See, for example, In re Abcor Development Co., supra; In re Hunter Fan Co., 78 USPQ2d 1474 (TTAB 2006).

[6] Even in <u>Grand Metropolitan Foodservice</u>, the Board found the mark per se projected a double meaning; the promotional materials emphasizing this meaning merely supported the Board's finding based on the mark alone.

Id. at 1470 (emphasis in original). The Board then reiterated: "A mark is not a double entendre if the second meaning is grasped by purchasers only when the mark is used with 'other indicia,' even if that other indicia is itself not merely descriptive." Id. at 1471.

Similarly, in In re Wells Fargo & Company, 231 USPQ 95 (TTAB 1986), applicant argued that its mark EXPRESSERVICE was not merely descriptive of banking services because of a double entendre, "the historical connotation with applicant's predecessor which was extensively involved in the Old West." Id. at 99. However, the Board found that "consumers associate 'Express Service' with this Old West imagery only when the term is used in association with the Wells Fargo name or with one of its allied marks (e.g., the stagecoach design)." Id. The applicant in that case had an argument very similar to applicant's position herein:

> In its reply brief, applicant contends
> by way of rebuttal that we are obliged
> to consider the issue before us in
> relation to the context of its use of
> EXPRESSERVICE, citing In re Tennis in
> the Round, Inc., 199 USPQ 196 (TTAB
> 1978), and that that context includes
> the name Wells Fargo and the depiction
> of a stagecoach in an Old West setting.
> Thus, appellant argues that, in the
> context of its use (i.e., in close
> association with the name Wells Fargo
> and the depiction of a stagecoach), as
> well as the continuing references to
> the word "express" in connection with

> Wells Fargo's historical foundation, EXPRESSERVICE is bound to convey the Old West imagery, thereby supporting the proposition that appellant's mark is suggestive rather then merely descriptive.

Id. at 100.

The Board rejected this argument:

> Appellant misconstrues *Tennis in the Round.* The only purpose of the reference to the specimen brochures in that case was to show that applicant's tennis courts were normal rectangular tennis courts rather than round ones (albeit, the entire facility had a circular configuration), thereby confirming that the services did not literally involve playing a game of tennis in a round tennis court. The well established rule that descriptiveness issues must be analyzed in relation to the context of use does not and cannot, obviously, mean that descriptiveness of the term sought to be registered must be evaluated as if that term were used in association with other nondescriptive indicia. In re *Nash-Finch Co.,* 160 USPQ 210 (TTAB 1968) ["The question is not whether the subject matter in association with other trademarks is capable of distinguishing applicant's goods but whether it is capable of distinguishing applicant's goods without reference to other indicia."]….

Thus, applicant's argument that it is appropriate to look to his specimens to find that his mark has a double entendre must be rejected.

We conclude that applicant's applied-for mark, URBANHOUZING in standard character form, will be immediately and directly perceived by consumers as the equivalent of the admittedly descriptive term URBAN HOUSING, rather than as including the separate word ZING. The mark, thus, does not convey a double entendre that would prevent it from being merely descriptive of applicant's services.

In reaching our conclusion that applicant's mark is merely descriptive, we have considered applicant's argument that "the Board employs three tests to determine whether a mark is suggestive rather than descriptive: (1) the "competitors' need test," (2) the "competitors' use test," and (3) the degree of imagination test." Brief, p. 17. Applicant bases this argument on No Nonsense Fashions Inc. v. Consolidated Foods Corp., 226 USPQ 502 (TTAB 1985). However, these "tests" were set out in an inter partes case in a discussion of whether use of a term by third parties on their packaging detracted from the plaintiff's trademark rights. Thus, to the extent that applicant is suggesting that the Office must prove all three points, applicant is incorrect. Since this decision issued in 1985, there have been numerous decisions from the Court of Appeals for the Federal Circuit and the Board making clear that the test

14

for descriptiveness is whether a term "immediately conveys knowledge of a quality, feature, function, or characteristic of the goods or services with which it is used." In re Bayer Aktiengesellschaft, 82 USPQ2d at 1831, citing In re Gyulay, 820 F.2d 1216, 1217, 3 USPQ2d 1009 (Fed. Cir. 1987). Further, with respect to applicant's statement that "the Examiner has also failed to show that any competitor has used, or will ever have need to use, the terms URBANHOUZING or HOUZING in connection with real estate services," brief, pp. 5-6, the test for descriptiveness is set out in the preceding sentence. There is no requirement that the Office prove actual competitor use or need; it is well established that even if an applicant is the only user of a merely descriptive term, this does not justify registration of that term. See In re BetaBattInc., 89 USPQ2d 1152, 1156 (TTAB 2008); In re Sun Microsystems, Inc., 59 USPQ2d 1084, 1087 (TTAB 2001); In re Acuson, 225 USPQ 790, 792 (TTAB 1985). In any event, applicant's arguments with respect to the lack of evidence of third-party use of URBANHOUZING or HOUZING for real estate services, or of dictionary definitions for those terms, goes to the particular spelling of HOUZING with a "Z." We have already discussed why the misspelling of the

merely descriptive term "urban housing" does not make applicant's mark registrable.

In view of our finding that URBANHOUZING in standard character format is merely descriptive of applicant's identified services, the second issue before us in this appeal, whether applicant's disclaimer of "urban housing" is appropriate, is moot. However, in order to render a complete opinion, we will address this issue, assuming, arguendo, that applicant's mark is not merely descriptive but is registrable. Such an assumption involves viewing applicant's mark as having a double entendre based on the misspelling of his mark to create the word ZING. In such a circumstance, the disclaimer of "urban housing" would not constitute a disclaimer of the entire mark, since the "ZING" portion and meaning of the mark creates a registrable element. Further, the disclaimer of the words "urban housing," spelled correctly, is the appropriate form of the disclaimer, since applicant is not claiming exclusive rights to use those words; he is claiming exclusive rights to use URBANHOUZING with the letter "Z." Accordingly, if applicant's mark were to be found inherently distinctive, the disclaimer submitted by applicant of the words "urban housing" is acceptable, and

16

the examining attorney's refusal to accept this disclaimer is reversed.

Decision:  The refusal on the ground that applicant's mark is merely descriptive of his identified services is affirmed.