CUSTOM BUSINESS SYSTEMS, INC., Plaintiff-Appellant, *v.* BOISE CASCADE CORPORATION, Defendant-Appellee.

Second District   No. 77-610

Opinion filed January 23, 1979.

William Ferguson, Timothy E. Cronin, and Keith E. Roberts, all of Donovan & Roberts, of Wheaton, for appellant.

J. William Hayton, of Bell, Boyd, Lloyd, Haddad & Burns, of Chicago, for appellee.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:

The plaintiff appeals from the trial court's order dismissing its complaint in an action for damages and injunctive relief arising out of alleged unfair competition and deceptive trade practices.

The amended complaint is in two counts—count I being for money damages based apparently on the common law tort of unfair competition and count II for damages and injunctive relief based on the Uniform Deceptive Trade Practices Act (Ill. Rev. Stat. 1975, ch. 121½, par. 311 *et seq.*). This Act is generally considered to have codified the common law tort of unfair competition. (*Mars, Inc. v. Curtiss Candy Co.* (1972), 8 Ill. App. 3d 338.) The specific complaint of the plaintiff here is that the defendant caused a likelihood of confusion or misunderstanding as to the source of goods, citing section 2(2) of the Uniform Deceptive Trade Practices Act, which reads as follows:

"A person engages in a deceptive trade practice when, in the course of his business, vocation or occupation, he:
* * *

(2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship approval or certification of goods or services; * * *."

The following circumstances are alleged to have constituted the defendant's deceptive trade practice. The plaintiff is an envelope manufacturer and the defendant is also developing a business in that field. The defendant gets out a house magazine called the Boise Cascade Quarterly and in the May 1976 issue of this magazine there was an article about color-coded envelopes discussing their development and use in connection with medical records. The article was accompanied by a

photograph which showed a hospital technician inspecting an envelope. Under the photo was the caption "A technician in a Chicago hospital holds a color-coded envelope designed by Boise Cascade." Actually, the envelope depicted in the photo had been designed and sold by the plaintiff, not by Boise Cascade. The plaintiff claims this was deliberate and deceptive and amounted to unfair competition as to the source of its product and was therefore a violation of that section of the Uniform Deceptive Trade Practices Act set forth above.

The plaintiff filed its complaint in August 1976 and an amended complaint in November 1976. The defendant filed a motion to dismiss the amended complaint and the plaintiff then amended its complaint and filed a second amended complaint in which it asked not only for damages and an injunction to restrain the defendant from "further distributing any false claims or photographs relating to plaintiff's color-coded envelopes' system and from claiming same as its own," but also praying that the defendant be requested to publish a retraction admitting the falsity of its photo and the caption.

The defendant in its February 1977 issue of Boise Cascade Quarterly did publish a statement admitting the caption of its photo in the May 1976 issue was in error and stating the envelopes shown were not manufactured by Boise Cascade and expressing regret for the error. It also filed its motion to dismiss the second amended complaint for failure to state a claim upon which relief could be granted.

After considering the briefs of counsel opposing and supporting such motion, the court dismissed the complaint "with prejudice and without leave to amend." It is from that order that the plaintiff appeals. The plaintiff's brief suggests in its form a distinction between the common law tort of unfair competition and a course of action based on the Uniform Deceptive Trade Practices Act, and we are not inclined to dispute that there may be a cause of action under certain aspects of the common law which are not covered by the Uniform Deceptive Trade Practices Act. However, the plaintiff does not set out in its brief a distinct theory under the common law which would entitle it to judgment separate and apart from issues cognizable under the Uniform Deceptive Trade Practices Act, and as the plaintiff admits in its brief, while over the years "the courts of Illinois and other states have consistently expanded and developed the scope of this tort * * * the case law which has come out of this development has not spelled out in well defined terms the elements necessary to state a cause of action for unfair competition."

It was no doubt for this reason that the legislature enacted the Uniform Deceptive Trade Practices Act which, as the plaintiff acknowledges in its brief, "was quickly recognized by the courts of Illinois as being a codification of the common law tort of unfair

competition." Since the plaintiff's brief does not point out any aspect of this case which constitutes a separate common law tort, in addition to the allegations of violation of the Uniform Deceptive Trade Practices Act, we are not inclined to search out the ramifications of a common law action, which might establish grounds for relief in addition to the elements of unfair competition recognized under the Act. We are inclined, therefore, as did the trial court, to consider the sufficiency of the complaint on the basis of the Uniform Deceptive Trade Practices Act.

Under the Act it appears to us that only section 2(2) can be logically claimed to apply to the facts of this case, that is, that the conduct of the defendant "causes likelihood of confusion or of misunderstanding as to the source, sponsorship approval or certification of goods or services." Section 3 of the Act, of course, provides for injunctive relief:

> "A person likely to be damaged by a deceptive trade practice of another may be granted an injunction against it in accordance with the principles of equity and upon terms that the court considers reasonable. Proof of monetary damage, loss of profits or intent to deceive is not required." (Ill. Rev. Stat. 1975, ch. 121½, par. 313.)

As to an injunction, however, this seems unnecessary since the defendant has already published an acknowledgment of its error and expressed regret for it. The nature of the publication in which the article appeared— a trade journal issued only quarterly—does not suggest a commercial motive or even a deliberate act and from the nature of the incident there is no reason to suppose that there is a threat of future misrepresentation of this sort which should be enjoined. The defendant, having admitted its error, would hardly be in a position to continue a course designed to exploit the original erroneous caption and we see no error in rejecting the prayer for injunction against repeating what the defendant admits was a mistake on its part.

■■■ We limit our consideration of the complaint to the issue raised by the photo, since it appears to us that only the allegation with regard to the effect of the misleading caption in the photo is both substantial and relevant to the question of unfair competition. That issue is as indicated above, the "likelihood of confusion or of misunderstanding as to the source, sponsorship approval or certification of goods or services." See *Clairol, Inc. v. Andrea Dumon, Inc.* (1973), 14 Ill. App. 3d 641, 648, where the court said:

> "It is clear from the legislative notes accompanying section 312(2) that the legislature intended, by the use of its phrase 'likelihood of confusion or misunderstanding,' to codify Illinois' common law tradition."

Such a likelihood is a source of legitimate concern to a competitor but it is

not enough to allege that such likelihood arises out of the situation described. As the trial court remarked in its memorandum opinion, such confusion or misunderstanding must be more than a mere possibility—possibilities of mistake or confusion are limitless amidst the complexities of the modern business world and unless the act or conduct in question establishes a *likelihood* of mistake or confusion disadvantageous to the plaintiff the possibility is too remote to be meaningful. Of course, in order to establish a likelihood rather than a mere possibility—that is, to establish that it is more probable than not that harm did or will result to the plaintiff—there must be more than the mere allegation that confusion occurred, to the injury of the plaintiff. As pointed out by the defendant in its motion to dismiss, the plaintiff did not allege and had no basis to claim that the design of the color-coded envelopes shown in the photo was unique and that potential customers recognized the unique design from the photo and were misled into buying from Cascade. It is not alleged that the particular design of the envelope shown in the photo had acquired a secondary meaning which inevitably associated it with the plaintiff. It appears to us that if a potential customer merely wanted color-coded envelopes he might have been induced by the photo to purchase them from Boise Cascade instead of from the plaintiff, but if, on the other hand, he wanted only a certain specifically designed color-coded envelope and only the plaintiff produced such envelope, the photo caption could not have injured the plaintiff and lost it business.

Naturally the plaintiff, if it had a head start in the color-coded market, wished to preserve its advantage and had a proper concern when another attempted to ride on its back, as it were. However, we cannot believe that the impact of the photo caption in question, appearing in a trade journal, was seriously damaging to the plaintiff's position. We must agree with the trial court that on the basis of the complaint and the opposing motions to dismiss, there are neither substantial factual allegations nor persuasive authority to sustain a cause of action under the Uniform Deceptive Trade Practices Act. The bare bones of the situation as set forth in the allegations of the complaint are not enough to constitute a cause of action, unless we accept certain speculations arising from the allegations as necessary results—which we are not inclined to do. A mere possibility that some confusion may arise from the misleading caption under the photo in question is too nebulous a basis for a cause of action. A substantial likelihood of confusion, damaging to the plaintiff, is not established by the actual facts alleged, without any claim or evidence of uniqueness or secondary meaning resulting from the design of the plaintiff's product. (See *Filter Dynamics International, Inc. v. Astron Battery, Inc.* (1974), 19 Ill. App. 3d 299.) We think the trial court did not

err in the ruling that the well-pleaded facts of the complaint did not state a claim upon which relief could be granted.

■ The plaintiff complains, however, that the court not only erred in dismissing the second amended complaint for failure to state a cause of action but compounded the error by doing so without leave to amend. The plaintiff contends, quite correctly, that under the Practice Act pleadings are to be liberally construed, and where a fault in pleading can be cured by amendment, an opportunity to do so should not be denied. It is true that the general rule with respect to pleadings is that a cause of action should not be dismissed unless it clearly appears that no set of facts can be proved which would justify recovery. (*Edgar County Bank & Trust Co. v. Paris Hospital, Inc.* (1974), 57 Ill. 2d 298; *J. J. Harrington & Co. v. Timmerman* (1977), 50 Ill. App. 3d 404.) Moreover, we agree with the plaintiff that the general rule enunciated above implies considerable liberality in allowing amendments to pleadings which have been found insufficient. It should be pointed out, however, that the plaintiff was not denied that opportunity in the case before us. The case was dismissed on the basis of the third complaint filed—this being the second amended complaint, following the filing of the original complaint and the amended complaint. Before granting the motion to dismiss the second amended complaint, the trial court called for briefs from both counsel in opposition and in support of the motion, and a further reply brief was filed by plaintiff's counsel. After the submission of the reply brief on June 23, 1977, the trial court took the motion under advisement and did not announce its decision until 60 days later, on August 24, 1977. Thus it is clear that the trial court did not act hastily or arbitrarily on the motion.

Moreover, after the trial court had indicated in a letter to both counsel the basis of its ruling and had signed the order dismissing the complaint, the plaintiff sought and was granted a hearing on a motion for leave to file a third amended complaint. In the colloquy between the court and plaintiff's counsel, the court made it clear that it had ruled as it did because it did not feel the complaint was further amendable so as to state a cause of action within the framework of the essential facts already pleaded in the previous complaint. However, the court gave plaintiff's counsel a last opportunity to present a third amended complaint, if such complaint sufficiently stated a cause of action. A portion of the colloquy at that hearing follows:

> "[THE COURT]: I don't want to foreclosure you from a motion for leave to file a third amended complaint if you could state to the Court that you would be reciting facts anew which would be so different from the facts that were alleged in the second amended complaint which would take it out of the context of the motion to

dismiss on which the Court received briefs, memoranda and made its ruling.

Do you understand what I'm talking about?

MR. CRONIN [attorney for plaintiff]: We are pretty much locked into those facts, Judge.

THE COURT: All right. Then that will be the ruling of the Court. I just didn't want to summarily shut you off. If you can state to the Court you have new facts or other facts or a different theory or something which would be contrary to what the Court's ruling was on the motion to dismiss I'd grant you leave. But if you are unable to say that then I think it should be dismissed.

MR. CRONIN: We would be alleging basically the same facts.

THE COURT: All right."

The above colloquy clearly indicates that the plaintiff was given a chance to amend again if it could realistically present a theory or set of facts different from what had already been ruled upon as insufficient. The plaintiff had no way of doing this—it was "locked into" the facts already adduced as the basis of its complaint. Thus, a third amended complaint would have been a futile gesture and under such circumstances the plaintiff's objection to the ruling of dismissal without leave to amend has no substance.

The motion to file additional transcript which was ordered taken with the case is allowed.

The judgment of the circuit court of Du Page County is affirmed.

Judgment affirmed.

SEIDENFELD and WOODWARD, JJ., concur.