ROXANNE CARRINGTON, Plaintiff-Appellant, *v.* SEARS, ROEBUCK & CO., Defendant-Appellee

NO. 9240

(CIVIL NO. 73318)

MAY 11, 1984

BURNS, C.J., HEEN, J., AND CIRCUIT COURT
JUDGE WENDELL K. HUDDY IN PLACE OF
ASSOCIATE JUDGE TANAKA, RECUSED

OPINION OF THE COURT BY HEEN, J.

Plaintiff Roxanne Carrington (Carrington) appeals from a summary judgment in favor of defendant Sears, Roebuck & Co. (Sears) in an action alleging a trademark violation and deceptive trade practice. Carrington contends that the trial court erred in 1) denying her motion for preliminary injunction,[1] and 2) granting summary judgment. We affirm.

Carrington is a free-lance artist who, in 1980, registered the trademark "Sunspots" with the then Department of Regulatory Agencies[2] pursuant to Hawaii Revised Statutes (HRS), chapter 482. Carrington registered only the word "Sunspots" without any particular design, symbol, or logo, and the application indicated that the registered mark would be used in connection with stationery and greeting card designs. During the ensuing two years, Carrington and Renetta P. Auchinleck (Auchinleck), doing business as Studio Symbios, designed, made, and sold greeting cards and stationery under the "Sunspots" label. The word "Sunspots" appeared on the back of the cards and on the labels accompanying the packaged cards. The cards also portrayed a "polynesian native" against a background containing a circle, apparently representing the sun. The labels contained a further descriptive word such as "Hawaiian" or "Tongan" to identify the "native" and distinguish

---

[1] Carrington's argument in this regard is that the trial court misinterpreted the law relating to trademark infringement and deceptive trade practices and, consequently, abused its discretion in denying her motion. In view of our holding, *infra*, that the trial court was correct in awarding summary judgment to Sears, the issue is moot.

[2] The agency's name has been changed to the Department of Commerce and Consumer Affairs. *See* 1982 Haw. Sess. Laws, Act 204, § 8.

one set of cards from another. Total gross sales during that period amounted to approximately $400. No other products bearing the "Sunspots" label were marketed by Carrington, although Auchinleck testified at the injunction hearing that Carrington contemplated expanding the use of the mark to a line of clothing.

In March or April of 1981, Sears began marketing in Hawaii a line of men's and women's sports apparel bearing its "Sun Spots" label. The label consists of a logo depicting the silhouette of a bird in a yellow, sun-like circle and the words "Sun Spots." Although Sears began using the trademark in Hawaii in March or April 1981, registration of the trademark was applied for with the United States Patent and Trademark Office on March 17, 1981, by Harper Industry, Inc. (Harper), a clothing manufacturer. On October 26, 1981, Harper assigned its "rights, title and interest" in the trademark to Sears. The record does not indicate whether Sears has registered the mark in Hawaii.

On September 14, 1982, Carrington filed this action alleging Sears' violation of HRS, chapters 481A and 482 relating to deceptive trade practices and trademark registration and protection, respectively. On October 7, 1982, Sears filed an answer and a counterclaim based upon alleged unfair trade practices committed by Carrington.

On January 12, 1983, Sears filed a motion for summary judgment seeking dismissal of Carrington's claim. After hearing, the trial court entered an order on March 18, 1983, which granted Sears' motion. This appeal followed.

However, since the March 18, 1983, order was not a "judgment,"[3] and because Sears' counterclaim was not disposed of below, we temporarily remanded this action to the lower court for entry of a proper judgment *nunc pro tunc* regarding Carrington's claim, and disposition of Sears' counterclaim or a *nunc pro tunc* certification pursuant to Rule 54(b), Hawaii Rules of Civil Procedure. On February 2, 1982, the lower court entered *nunc pro tunc* a dismissal of Sears' counterclaim and a judgment in favor of Sears on Carrington's claim.

---

[3] *See M. F. Williams, Inc. v. City and County of Honolulu,* 3 Haw. App. 319, 650 P.2d 599 (1982).

## I.

Although Carrington argues that material facts are at issue, she has not brought any to the attention of this court via her briefs nor has our review of the record revealed any. She contends, however, that "likelihood of confusion" is a factual determination upon which there exists a genuine issue and the court should not have granted summary judgment. We disagree.

Summary judgment is properly granted if the record indicates there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *Fochtman v. Honolulu Police and Fire Departments,* 65 Haw. 180, 649 P.2d 1114 (1982); *McKeague v. Talbert,* 3 Haw. App. 646, 658 P.2d 898 (1983). A fact is material if proof thereof would have the effect of establishing or refuting one of the essential elements of a cause of action or defense. *McKeague v. Talbert, supra.* Where there are no genuine issues of fact, a defendant, on proper motion, is entitled to judgment as a matter of law if it is clear that there is no discernible theory under which plaintiff could recover. *Abraham v. Onorato Garages,* 50 Haw. 628, 446 P.2d 821, *reh'g denied,* 50 Haw. 639 (1968); *Yamamoto v. Premier Insurance Co.,* 4 Haw. App. 429, 668 P.2d 42 (1983); *Costa v. Able Distributors, Inc.,* 3 Haw. App. 486, 653 P.2d 101 (1982). Furthermore, both the trial court and the appellate court must view the evidence in the light most favorable to the non-moving party. *Standard Finance Co. v. Ellis,* 3 Haw. App. 614, 657 P.2d 1056 (1983).

## II.

Generally a trademark infringement occurs when, by the use of another's mark or label, one misrepresents to the public that his goods are produced by the true owner of the trademark, and the true owner is deprived of the goodwill and reputation established by the articles marketed by him. 74 Am. Jur. 2d *Trademark and Tradenames* § 85 (1974). The party whose trademark is infringed upon may have a cause of action for injunctive relief and damages caused by the intrusion. 74 Am. Jur. 2d *Trademarks and Tradenames* § 145 (1974).

In Hawaii, the registration and protection of trademarks, prints, labels and trade names is governed by HRS chapter 482

(1976, as amended). Section 482-4(a), HRS (Supp. 1983), prohibits the use of a print, label, trademark, service mark or trade name identical to one previously registered or so similar as to be confused therewith.[4]

An alleged trademark infringement may also give rise to a deceptive trade practices action under HRS § 481A-3,[5] which provides protection against the marketing of products or services in a manner which causes a "likelihood of confusion" as to their source, sponsorship, approval, or certification or as to their affiliation, connection or association with products or services already established in the marketplace.

In actions which allege violations under the above statutes, the question arises as to what test should be employed to determine when a trade practice is deceptive and when a trademark is so similar to one already registered as to be confused therewith.

The legislative history of HRS chapter 481A indicates that it was patterned after the Uniform Deceptive Trade Practices Act, 1966 Revision. *See* Sen. Stand. Comm. Rep. No. 537, *reprinted in* 1969 Senate Journal, at 1077-1078. The commentary to § 2(a)(2) in the Uniform Act states that the trend of authority utilizes the "likelihood of confusion" test as the measure of a deceptive trade practice. Consequently, we hold that the "likelihood of confusion"

---

[4] HRS § 482-4(a) states:

Certain prints, labels, trademarks, service mark, union labels and trade names not to be adopted or used. (a) It is unlawful for any person to adopt or use a print, label, trademark, service mark or trade name, which is identical with any registered print, label, trademark, service mark or trade name or so similar as to be confused therewith, . . . and the director of commerce and consumer affairs shall not register any such print, label, trademark, service mark or trade name.

The only difference between the 1982 and 1983 version of HRS § 482-4(a) is the change of the title of the Department of Regulatory Agencies to that of the Department of Commerce and Consumer Affairs. *See* footnote 1, *supra*.

[5] HRS § 481A-3 states in pertinent part:

Deceptive trade practices. (a) A person engages in a deceptive trade practice when, in the course of his business, vocation, or occupation, he:

\* \* \*

(2) Causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

(3) Causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another[.]

test is determinative of whether a trade practice is deceptive under HRS § 481A-3(a)(2), (3).

On the other hand, neither the language nor the legislative history of HRS § 482-4 is as illuminating in suggesting a test for determining whether its provisions are violated. A review of the law on trademarks indicates that the touchstone of both common law and federal[6] trademark infringement actions is also the "likelihood of confusion" test.[7] McCarthy, 2 *Trademarks and Unfair Competition,* § 23:1 (1973) (hereafter McCarthy). Consequently, we also adopt the "likelihood of confusion" test for determining the existence of a trademark infringement in actions under chapter 482.

A likelihood of confusion exists when consumers confronted with products or services bearing one label or mark would be likely to assume that the source of the products or services is the same as or associated with the source of a different product or service identified by a similar mark. *Alpha Industries, Inc. v. Alpha Steel Tube & Shapes, Inc.,* 616 F.2d 440 (9th Cir. 1980). Where there is no likelihood of confusion between two products bearing the same or similar label or mark, an action based on deceptive trade practices or trademark infringement obviously will not lie.[8] *See Hawaii Calls, Ltd. v. Perfumes Polynesia, Ltd.,* 399 F. Supp. 604 (D. Hawaii 1975). *See also Henri's Food Products Co. v. Kraft, Inc.,* 717 F.2d 352 (7th Cir. 1983). *Cf.* McCarthy, *supra,* § 23:1.

In *Astra Pharmaceutical Products, Inc. v. Beckman Instruments, Inc.,* 718 F.2d 1201 (1st Cir. 1983), it was stated that in determining whether a likelihood of confusion exists, the evidence should be examined in the light of the following eight factors: 1) similarity of the marks; 2) similarity of the goods; 3) relationship between the

---

[6] *See* Lanham Act, 15 U.S.C. § 1114 (1962).

[7] The Model State Trademark Act also utilizes the "likelihood of confusion" test for determining trademark infringement. Only four states including Hawaii have not adopted the Model Act. McCarthy, 2 *Trademarks and Unfair Competition,* § 22:5 (Supp. 1983).

[8] In some instances, it has been held that the mere possibility that confusion may arise between two marks is too nebulous a basis to sustain a cause of action for trademark infringement. *See* 2 McCarthy, *Trademarks and Unfair Competition,* § 23:1 (1973); *Carter Wallace, Inc. v. Proctor & Gamble Co.,* 434 F.2d 794 (9th Cir. 1970); *Custom Business System, Inc. v. Boise Cascade Corp.,* 68 Ill. App. 3d 50, 385 N.E.2d 942 (1979).

parties' channels of trade; 4) relationship between the parties' advertising; 5) class of prospective purchasers of the products; 6) evidence of actual confusion; 7) defendant's intent in adopting its mark; and. 8) strength of plaintiff's mark. *See also Pignons S.A. de Mecanique de Precision v. Polaroid Corp.,* 657 F.2d 482 (1st Cir. 1981). Where, as in the instant case, the evidence regarding those factors is undisputed, the trial court may determine as a matter of law whether a likelihood of confusion exists. *J. B. Williams Co. v. Le Conté Cosmetics, Inc.,* 523 F.2d 187 (9th Cir. 1975), *cert. denied,* 424 U.S. 913, 96 S. Ct. 1110, 47 L.Ed.2d 317 (1976).

As stated above, Carrington has not specified any genuine issues of fact, and our review of the record fails to show any. Therefore, we examine the undisputed evidence in the light most favorable to Carrington to determine whether Sears was entitled to judgment as a matter of law. *See Astra Pharmaceutical Products, Inc. v. Beckman Instruments, Inc., supra.* If the evidence relating to the *Astra Pharmaceutical* factors indicates no likelihood of confusion exists, the trial court's granting of summary judgment must be affirmed. *Id.*

1) SIMILARITY OF THE MARKS.

The similarity of the marks is tested on three levels: sight, sound, and meaning. *AMF Inc. v. Sleekcraft Boats,* 599 F.2d 341 (9th Cir. 1979). The marks are considered as they are encountered in the marketplace, *Alpha Industries, Inc. v. Alpha Steel Tube & Shapes, Inc., supra,* and are examined as entities. Similarities are given more weight than differences. *AMF Inc. v. Sleekcraft Boats, supra.* If the marks appear in conjunction with a clearly displayed name or logo of the manufacturer, there is less likelihood of confusion, although the marks might be similar. *Astra Pharmaceutical Products, Inc. v. Beckman Instruments, Inc., supra. Cf. Schmid Laboratories v. Youngs Drug Products Corp.,* 482 F. Supp. 14 (D. N.J. 1979) (trial court found that the marks "ribbed" and "sensi-ribbed" were prominently displayed with their respective brand names and that the average consumer was not likely to be confused as to the origin of the products).

Sound is an important consideration in this factor because reputation is often conveyed by word of mouth, and slight differ-

ences in the sounds of trademarks will not protect an infringer. *See G. D. Searle & Co. v. Charles Pfizer & Co.,* 265 F.2d 385 (7th Cir.), *cert. denied,* 361 U.S. 819, 80 S. Ct. 64, 4 L.Ed.2d 65 (1959). A claim of similarity may also be substantiated where the words of the marks have similar meanings. *AMF Inc. v. Sleekcraft Boats, supra.* Where the words comprising the marks are virtually synonomous, the marks may be held similar.

Here, both marks sound the same, although Carrington uses one word while Sears uses two words. Pictorially, however, they differ markedly. Carrington uses "Sunspots" in combination with a descriptive polynesian ethnic classification, such as "Hawaiian Sunspots" or "Tongan Sunspots," as labels for cards that depict a drawing of a polynesian native. Sears uses "Sun Spots" in conjunction with a logo depicting the silhouette of a bird in a yellow sun-like circle. Carrington's mark conjures up a South Pacific island ambience. Sears' mark, on the other hand, connotes the sun itself as a sign of the active life associated with the products on which it is used. The marks are similar in sound but different in appearance and meaning.

## 2) SIMILARITY OF GOODS.

If the goods on which the marks appear are similar in nature, there is a danger that the public will mistakenly assume an association between their producers or manufacturers. *AMF Inc. v. Sleekcraft Boats, supra.* Therefore, where the goods are complementary, or are sold to the same class of purchasers, or are similar in use and function, a deceptive trade practice or trademark infringement may occur, even though the trademarks are not entirely similar. *Id.*

Carrington presently uses her mark only in connection with greeting cards and stationery.[9] Sears markets active wear such as shorts, "T" shirts and warm-up suits bearing its logo.

## 3) RELATIONSHIP BETWEEN PARTIES' CHANNELS OF TRADE.

Where channels of trade, which are also known as marketing

---

[9] Although Auchinleck testified that Carrington contemplated expanding into a clothing line, she also indicated that this was merely speculation.

channels, are convergent, the likelihood of confusion is increased, *AMF Inc. v. Sleekcraft Boats, supra,* and the evidence must be examined to determine whether the sales methods and marketing channels for the products are overlapping. *Pignons S.A. de Mecanique de Precision v. Polaroid Corp., supra.*

## 4) RELATIONSHIP BETWEEN PARTIES' ADVERTISING.

Where the evidence indicates that the advertising methods are similar or are directed to the same or similar class of consumers, there is a greater likelihood of confusion. *Astra Pharmaceutical Products, Inc. v. Beckman Instruments, Inc., supra.*

## 5) CLASS OF PROSPECTIVE PURCHASERS.

With respect to the class of prospective purchasers factors, the important inquiry is the cost of the respective products. Courts have held that there is less likelihood of confusion where products are expensive and, therefore, are purchased only after careful consideration of the products and their identifying marks. *Astra Pharmaceutical Products, Inc. v. Beckman Instruments, Inc., supra.*

The above three factors are interrelated and are generally considered together. In the instant case, the extremely different marketing channels used by the parties reduces the possibility of confusion. Carrington markets her goods via individual buyers and boutiques, while Sears markets its goods only through its department stores and mail order catalog. Carrington basically has no advertising and merely wholesales her products to different individual buyers and boutiques. Sears advertises in the newspaper and in its catalog. There is nothing in the record relating to the class of buyers of the products in question. We do not consider that as affecting the outcome of this matter in view of the other evidence in the record.

## 6) EVIDENCE OF ACTUAL CONFUSION.[10]

Evidence that use of the two marks has already led to confusion

---

[10] Carrington argues that the trial court misinterpreted the relevant law and that proof of competition between the parties or actual confusion or misunderstanding is

is persuasive proof that future confusion is likely. *Alpha Industries, Inc. v. Alpha Steel Tube & Shapes, Inc., supra.* However, proof of actual confusion is difficult, and the failure to prove instances of actual confusion is not dispositive. *AMF Inc. v. Sleekcraft Boats, supra.*

Here, Auchinleck testified that she could not recall any specific instance of confusion, and no other evidence was submitted.

## 7) DEFENDANT'S INTENT IN ADOPTING ITS MARK.

When an alleged infringer knowingly adopts a mark similar to another, the courts presume that the defendant's purpose is to deceive the public. *AMF Inc. v. Sleekcraft Boats, supra.* A party's good faith in adopting a mark is less probative of the likelihood of confusion, but may be given considerable weight in fashioning a remedy. *Id.*

In the instant case, there is no evidence to indicate that Sears was marketing its "Sun Spots" line in Hawaii with the intent of causing confusion between the parties' respective products or capitalizing on Carrington's reputation and goodwill. On the contrary, the evidence indicates that Sears' activity in Hawaii was merely a part of its nation-wide operation. There is nothing to suggest that Sears had anything but a legitimate intention in using the "Sun Spots" mark.

## 8) STRENGTH OF THE PLAINTIFF'S MARK.

Here, the inquiry is whether the mark is a "strong" one or a "weak" one. A strong mark is one which is distinctive and used in a fictitious, arbitrary and fanciful manner, *Alpha Industries, Inc. v. Alpha Steel Tube & Shapes, Inc., supra,* and is entitled to the widest ambit of protection from infringing uses. *AMF, Inc. v. Sleekcraft Boats, supra.* The best example is a name that is made up by the user.

---

not required in order to succeed in either a deceptive trade practice or trademark infringement action. While the argument is correct, *see* HRS § 481A-3(b); McCarthy, *supra,* § 23:2, it does not assist her in this case, since there is no likelihood of confusion shown.

A "descriptive" mark is one which tells something about the product and will only be protected where a secondary meaning is shown. *Id.* "Suggestive" marks lie in between strong marks and descriptive ones and encompass marks which subtly connote something about the products with which they are associated. *Id.* A suggestive mark is less distinctive than an arbitrary or fanciful mark, and is considered as a comparatively weak mark. However, it will be protected without proof of a secondary meaning. Descriptive and suggestive marks are considered weak marks and only where the marks are quite similar and the goods are closely related will infringement be found. *Id.*

The evidence indicates that Carrington's mark is merely a suggestive one. Sunspots is a commonly used term to describe the dark spots that sometimes appear on the sun's surface, and there is no evidence to suggest that Carrington's mark possesses such a degree of distinctiveness as to make it a strong mark. *See Pignons S.A. de Mecanique de Precision v. Polaroid Corp., supra.* It is, rather, one which subtly connotes something about Carrington's product.

Our review of the evidence, in the light most favorable to Carrington, and within the parameters of the *Astra Pharmaceutical* factors, convinces us that the court below was correct in awarding summary judgment to Sears. The evidence clearly indicates that, as a matter of law, there is no likelihood of confusion between Carrington's "Sunspots" and Sears' "Sun Spots" labels. Therefore, Carrington could not succeed on either the trademark infringement or the deceptive trade practice action.

Affirmed.

*Jack F. Schweigert* (*Jack M. K. Gonzales* with him on the brief, *Schweigert & Associates* of counsel) for plaintiff-appellant.

*Edward J. Bybee* (*Philip J. Deters* with him on the brief, *Rother, Bybee, Chang & Rulon* of counsel) for defendant-appellee.