**Electronically Filed
Intermediate Court of Appeals
CAAP-20-0000727
07-AUG-2024
08:40 AM
Dkt. 132 MO**

NO. CAAP-20-0000727

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

ROLAND S. GUIEB, individually and
derivatively on behalf of GUIEB INCORPORATED, Plaintiff/
Counterclaim Defendant-Appellant/Cross-Appellee,
v.
ROBERT S. GUIEB, Defendant-Appellee/Cross-Appellant,
and
GUIEB INCORPORATED, a registered Hawaii corporation,
Defendant/Counterclaimant-Appellee/Cross-Appellant,
and
PACIFIC WELDING AND MANUFACTURING, LLC; GUIEB GROUP LLC; RSG
ENTERPRISES, LLC, a registered Hawaii limited liability company,
Defendants-Appellees/Cross-Appellants,
and
JOHN DOES 1-20; JANE DOES 1-20 and DOE ENTITIES 1-20, Defendants

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CASE NO. 1CC171001045)

**MEMORANDUM OPINION**
(By: Leonard, Acting Chief Judge, Wadsworth and Guidry, JJ.)

Plaintiff/Counterclaim Defendant-Appellant/Cross-Appellee Roland Guieb (**Roland**) appeals from the First Amended Final Judgment (**Judgment**) entered by the Circuit Court of the First Circuit (**circuit court**), on October 25, 2021.[1] Defendants/Counterclaimant-Appellees/Cross-Appellants Robert

---

[1] The Honorable John M. Tonaki presided over the jury trial and some pretrial proceedings. The Honorable James S. Kawashima presided over motions filed from May 30, 2019 through July 19, 2019.

Guieb (**Robert**), and Guieb Incorporated (**GI**), Pacific Welding and Manufacturing, LLC (**Pacific Welding**), Guieb Group LLC (**GG**), and RSG Enterprises, LLC (**RSG**) (collectively referred to as the **business entities**) cross-appeal from the Judgment.

On appeal, Roland raises ten points of error, consolidated as follows, in which he contends that the circuit court erred by:[2]

1. Denying his motions for summary judgment, and Judgment as a Matter of Law (**JMOL**) on GI's counterclaim (points of error 1, 10);

2. Granting Robert's motions for summary judgment and JMOL on Roland's claims for breach of fiduciary duties based on kinship, conspiracy, unfair business practices, and punitive damages (points of error 2, 3, 4, 5);

3. Denying him prejudgment interest, and delaying entry of the judgment (points of error 6, 8);

4. Denying him a preferential dividend so that all damages awarded by the jury go to him (point of error 7); and

5. Denying him attorney's fees and costs (point of error 9).

Robert and the business entities raise three points of error, contending that the circuit court erred by:[3]

---

[2]     In addition to the Judgment, Roland appeals from the circuit court's Order Denying Defendants'/Counterclaimant's Motion for Attorneys' Fees and Costs (Non-Hearing Motion Filed September 9, 2020), entered October 26, 2020; Findings of Fact and Conclusions of Law and Order, entered July 2, 2020; and Order Denying Plaintiffs' Renewed Motion for Judgment as a Matter of Law, Filed Feb. 5, 2020, entered April 2, 2020.

[3]     In addition to the Judgment, Robert cross-appeals from the: (1) Order Denying Defendants' Renewed Motion for Judgment as a Matter of Law, Filed Feb. 5, 2020, entered April 2, 2020; (2) Order Granting in Part and Denying in Part Plaintiffs' Motion to Dismiss Their Count I (Dissolution), or Additionally/Alternatively, Plaintiffs' Motion To Enter Final Judgment and

(continued . . .)

1. Denying their Renewed JMOL on Roland's claims;

2. Allowing Roland to dismiss his claim for corporate dissolution without imposing conditions; and

3. Denying them attorney's fees and costs.

Upon careful review of the record and relevant legal authorities, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve their points of error as follows.

## I.  Background

This case involves a business dispute between two brothers, Robert and Roland Guieb.  On June 19, 2018, Roland filed a First Amended Complaint (**FAC**), in which he alleged he was the minority shareholder of GI, his brother Robert was the majority shareholder and an officer and director, and that Robert took opportunities and assets of GI to benefit himself and his other businesses, Pacific Welding and GG.  He alleged that RSG, held equally by Roland and Robert, owned the real property that served as GI's principal place of business, and Pacific Welding was conducting business from RSG's property without paying for its use.  Roland also claimed that Robert misappropriated GI's trade name, "Exhaust Systems Hawaii," that Robert used GI's trade name for a shop he opened in Kalihi (the **Kalihi Shop**), and that Robert took GI's Honolulu shop for himself.

The FAC asserted claims for: (1) judicial dissolution of GI; (2) usurping corporate opportunity/conversion/unjust enrichment; (3) breaches of fiduciary duties; (4) breaches of fiduciary duties arising out of kinship; (5) accounting/audit; (6) fraud/misrepresentation/nondisclosure; (7) "Squeeze Out"

_____

for [Hawaiʻi Rules of Civil Procedure (**HRCP**)] Rule 54(b) Certification, Filed May 15, 2020, [Dkt. 286], entered July 10, 2020; and (3) Order Denying Defendants'/Counterclaimant's Motion for Attorneys' Fees and Costs (Non-Hearing Motion Filed September 9, 2020), entered October 26, 2020.

Roland from GI causing damage to Roland; (8) "Squeeze Out" Roland from GI causing damage to GI; (9) conspiracy to "Squeeze Out" Roland causing damage to Roland; (10) conspiracy to "Squeeze Out" Roland causing damage to GI; (11) trade name infringement; (12) Unfair and Deceptive/Unfair Competition under Hawaii Revised Statutes (**HRS**) §§ 480-2 and 481A-3; (13) wanton, willful and fraudulent usurpation of corporate opportunity; (14) conspiracy to usurp corporate opportunity; and (15) breaches of fiduciary duties; aiding and abetting the breaches.

In July 2018, Robert and the business entities answered the FAC, and GI filed a counterclaim against Roland. GI's counterclaim alleged that Roland, GI's treasurer for decades, used corporate funds to pay personal expenses totaling more than $800,000. The counterclaim asserted claims for: (1) misappropriation and conversion of corporate funds; (2) breach of fiduciary duty; (3) fraud/fraudulent concealment; (4) negligence; (5) breach of contract-Bylaws; (6) unjust enrichment; (7) judicial removal of Roland as director; (8) declaratory relief; and (9) injunctive relief.

In May 2019, Roland moved for partial summary judgment, contending that Robert breached his fiduciary duties. In June 2019, Robert and the business entities moved for partial summary judgment, contending that Roland breached his fiduciary duties. The circuit court denied both motions.

In October 2019, Roland moved for dismissal of GI's counterclaims, or in the alternative for summary judgment, contending that Robert did not have corporate authority to file the counterclaim. The circuit court denied the motion.

In November 2019, Robert and the business entities moved for partial summary judgment on the FAC Counts 4, and 9-15. The circuit court granted the motion in part on Counts 4, 9, 10, 12, 14, and 15, and on Count 13 to the extent it alleged

4

aiding and abetting.  The circuit court reasoned that kinship by itself is insufficient to establish a fiduciary relationship, and there was no evidence that Robert conspired with anyone to harm Roland.  The circuit court also concluded that, because GG and GI were selling the same product and service, Roland could not prevail on his unfair and deceptive trade practices claim because he would be unable to establish that GG was "passing off goods or services" as being that of GI.  The circuit court denied summary judgment on the trade name infringement claim.

Jury trial began on December 16, 2019.

On December 26, 2019, Robert and the business entities moved for JMOL.  During argument on the motion, the circuit court denied Roland's request to strike GI's counterclaim.  The circuit court dismissed Roland's claim for punitive damages.

On December 30, 2019, the jury returned its verdict in favor of Roland on the fraudulent non-disclosure claim, and awarded him damages of $42,000 against Robert, and $28,000 against GG.  The jury awarded GI damages of $10,000 against Robert, and $20,000 against GG for trade name infringement.  The jury awarded GI damages of $42,000 against GG for unjust enrichment.

On GI's counterclaim, the jury found that Roland breached his fiduciary duties (Count 2) and contractual duties arising from the Bylaws (Count 5), and awarded nominal damages of $1 on each count.

The jury denied all other claims.

In February 2020, Roland filed a Renewed Motion for Judgment as a Matter of Law, or Alternatively, to Reconsider, Alter or Amend Judgment, and/or Motion for New Trial, and for Attorney's Fees and Costs.  Also in February 2020, Robert and the business entities filed a Renewed Motion for Judgment as a

Matter of Law.  The circuit court denied both motions in April 2020.

In May 2020, Roland moved to dismiss his corporate dissolution claim (Count 1 of the FAC), or alternatively for [HRCP] Rule 54(b) final judgment certification.  The circuit court dismissed Counts 1 and 5 of the FAC with prejudice, and denied the request for [HRCP] Rule 54(b) certification as moot.

In July 2020, the circuit court entered findings of fact and conclusions of law on the equitable relief requests in GI's counterclaim.  The circuit court denied the request that Roland be removed as GI Director because the jury verdicts in Roland's favor on the fraudulent non-disclosure, trade name infringement, and unjust enrichment claims established that Robert had unclean hands.  Moreover, the circuit court concluded that Roland's breaches of fiduciary duty, as found by the jury, were caused by animosity between the brothers, rather than "fraudulent or dishonest conduct or gross abuse of authority or discretion" directed at GI, and the requests for declaratory and injunctive relief were moot.

Final Judgment was entered on August 26, 2020.  In September 2020, Robert and the business entities filed a motion for attorneys' fees and costs, which the circuit court denied, ruling that "[e]ach party shall bear its own attorney's fees and costs."

This appeal and cross-appeal followed.[4]

## II.  Discussion

### A. Roland's Points of Error

#### 1. GI Counterclaim

---

[4]     On September 29, 2021, this court entered an order remanding the case to the circuit court for entry of an amended judgment resolving Count 4 of the FAC.  The circuit court entered a First Amended Final Judgment on October 25, 2021.

Roland contends that the circuit court should have granted summary judgment in his favor, by dismissing GI's counterclaim, because Robert lacked corporate authorization to file the counterclaim in GI's name or should have filed in a derivative capacity after first making a demand on GI's board of directors.  Roland's claim lacks merit.

The record reflects that GI is a closely held corporation, and that the only shareholders and officers are Robert and Roland.  Roland's filing of a lawsuit, seeking the dissolution of GI, threatened an immediate and vital injury to the corporation.  Chun v. Bd. of Trs. of Emps.' Ret. Sys., 87 Hawaiʻi 152, 165, 952 P.2d 1215, 1228 (1998) ("[P]ractical necessity has dictated the rule that the president as chief officer of a going concern may[,] even in the face of deadlock[,] take steps to protect corporate interests where immediate and vital injury threatens.") (citation omitted).  Under these circumstances, it would have been futile for Robert to seek Roland's approval to file a counterclaim against a lawsuit that was brought by Roland himself.  Fujimoto v. Au, 95 Hawaiʻi 116, 149, 19 P.3d 699, 732 (2001) (cleaned up) ("When the futility of seeking the desired action from the alleged wrongdoers is patent, . . . efforts to obtain action by the directors and shareholders are not necessary, and the allegations of wrongdoing themselves adequately establish the reasons for not making the effort to obtain corporate action.") (citation omitted).  We therefore conclude, on this record, that the circuit court properly denied Roland's summary judgment motion seeking dismissal of GI's counterclaim.[5]

---

[5]     We decline to address Roland's additional argument that there is no cause of action for breach of corporate bylaws, an argument that Roland did not assert below.  HRS § 641-2(b) (2016) ("The appellate court may correct any error appearing on the record, but need not consider a point that was not presented in the trial court in an appropriate manner.").

## 2. Breach of Fiduciary Duties

Roland contends that the circuit court erred in granting summary judgment on his claims for breach of fiduciary duties based on kinship, conspiracy to breach fiduciary duties, and unfair business practices, and for JMOL on his claim for punitive damages. We address Roland's contentions as follows:

(1) We conclude that the circuit court erred in granting summary judgment on Roland's claim for breach of fiduciary duties based on kinship.

> To claim breach of fiduciary duty, a plaintiff must show that a fiduciary relationship existed between the parties, the defendant breached a fiduciary duty to the plaintiff, and the breach proximately caused injury to the plaintiff. A fiduciary relationship exists when there is a relationship of trust and confidence.

Swift v. Swift, No. CAAP-13-0000101, 2016 WL 3573970, at *33 (Haw. App. June 30, 2016) (mem. op.) (citations omitted).

Roland attested below that he "had a very good and trusted relationship [with Robert] from way back in childhood[,]" that Robert told him that "the 55%-45% division would have absolutely no effect on how we ran [GI]" and he "completely trusted and believed [Robert], and therefore accepted (transacted) a 45% interest in [GI]." Robert and Roland started their business in 1985 as a partnership, and incorporated in 1991. Roland further attested that Robert later used his majority shareholder status to eliminate Roland's check-writing authority, reduce his salary, and misappropriate GI's King Street shop and other assets. Accepting Roland's allegations as true, a jury could find that Robert only acquired majority ownership of GI because Roland, on the basis of a confidential familial relationship, relied on the representations of his brother. We find that Roland satisfied his burden of establishing a genuine question of material fact regarding breach of fiduciary relationship based on kinship.

(2) We conclude that the circuit court did not err in granting summary judgment on Roland's conspiracy claims.[6] Roland relies on Robert's Hawaii School Bus, Inc. v. Laupahoehoe Transp. Co., 91 Hawaiʻi, 224, 253, 982 P.2d 853, 882 (1999) (citations omitted), superseded by statute on other grounds as stated in Calipjo v. Purdy, 144 Hawaiʻi 266, 277 n. 23, 439 P.3d 218, 229 n. 23 (2019), for the proposition that "when officers of a corporation act for their own personal purposes, they become independent actors, who can conspire with the corporation." Roland's reliance on Robert's Hawaii is misplaced, however. There, the court ruled that because a corporate officer shared the same economic interest as the alleged co-conspirator corporations (he was the 94% owner of the corporations' holding company), he could not conspire with the corporations for purposes of HRS §§ 480-4 or 480-9. Robert's Hawaii, 91 Hawaiʻi at 253, 982 P.2d at 882. Here, it was undisputed that Pacific Welding and GG were owned solely by Robert, and "the portion of RSG controlled by Robert" was the portion (*i.e.*, 50%) that he owned. In these circumstances, Robert shared the same economic interest as his alleged corporate co-conspirators, and the circuit court did not err by determining as a matter of law that Robert could not conspire with them.

(3) We conclude that the circuit court erred in granting summary judgment with regard to Roland's Unfair or Deceptive Acts or Practices (**UDAP**) claims. Roland asserted claims pursuant to HRS §§ 480-2 and 481A-3. HRS § 480-2(a) (2008) states that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or

---

[6] FAC Counts 9 and 10 asserted conspiracy claims against Robert, Pacific Welding, GG, and "that portion of RSG controlled by . . . Robert." FAC Count 14 asserted a conspiracy claim against Robert and GG.

commerce are unlawful."  A deceptive act UDAP claim requires the plaintiff to prove "(1) a representation, omission, or practice that (2) is likely to mislead consumers acting reasonably under the circumstances where (3) the representation, omission, or practice is material."  State ex rel. Shikada v. Bristol-Myers Squibb Co., 152 Hawaiʻi 418, 443, 526 P.3d 395, 420 (2023) (citation omitted).  An unfair act UDAP claim requires a showing that an act (1) offends public policy, (2) is immoral, unethical, oppressive, or unscrupulous, or (3) substantially injures Hawaiʻi consumers.  Id. at 445, 526 P.3d at 422.

HRS § 481A-3 (2008) states, "[a] person engages in a deceptive trade practice when, in the course of the person's business . . . the person . . . (3) [c]auses likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another[.]"  HRS § 481A-4(a) allows the court to grant an injunction against a deceptive trade practice, which is "in addition to remedies otherwise available against the same conduct under the common law or other statues of this State."  HRS § 481A-4(c).

The circuit court granted summary judgment in favor of Robert on Roland's UDAP claim, reasoning that Roland would not be able to establish that GG was "passing off goods or services" as GI's because GG and GI were selling the same product. However, Robert's own expert, Eddy N. Kemp, represented in a valuation report that "[GG], which does business as Exhaust Systems Hawaii Kalihi-Kai, could be viewed as a competitor to [GI], which does business as Exhaust Systems Hawaii":

> The [GI] website address is https://www.exhaustsystemshawaii.net/.  Reviewing the website, it could appear that Exhaust Systems Hawaii and Exhaust Systems Hawaii Kalihi-Kai are one entity as all the shops are listed.  There is nothing on the website to delineate the two different ownership groups.  In practice, if there are services the Kailua or Waipahu shops are unable to provide, the work is referred to [GG's] Kalihi-Kai shop.

On this record, we conclude that the circuit court should have allowed Roland's UDAP claim to go to the jury. See Hungate v. Law Off. of David B. Rosen, 139 Hawaiʻi 394, 410, 391 P.3d 1, 17 (2017), abrogated in part State ex. Rel. Shikada, 152 Hawaiʻi at 445-46, 526 P.3d 1t 422-23.

(4) We conclude that the circuit court erred in granting JMOL in favor of Robert on Roland's punitive damages claim. We review the circuit court's ruling on JMOL *de novo*. In re Est. of Herbert, 90 Hawaiʻi 443, 454, 979 P.2d 39, 50 (1999). Punitive damages are an extraordinary remedy. Fisher v. Grove Farm Co., 123 Hawaiʻi 82, 119, 230 P.3d 382, 419 (Haw. App. 2009). Pursuant to Masaki v. Gen. Motors Corp., 71 Haw. 1, 6, 780 P.2d 566, 570 (1989), a defendant's wrongdoing must be intentional and deliberate and have the character of outrage frequently associated with a crime.

Roland testified that, in 1985, he left a restaurant job to become partners with Robert in a muffler shop business in Waipahu. The business incorporated in 1991 as GI, opened additional locations in Kailua and on King Street, and did business as Exhaust Systems Hawaii. After 25 years, Robert told Roland he was opening a separate business, Pacific Welding, which initially operated from GI's Kailua shop before moving to GI's Waipahu shop.

In January 2017, Roland learned that GI no longer owned the King Street shop, and that it was owned by GG. Robert did not inform him that he was taking the King Street shop for GG; Roland learned of the transfer in ownership through parts deliveries for GG. Larry Anderson, Roland and Robert's bookkeeper, testified that Robert did not notify him that the King Street shop was being transferred to GG, and that he learned of the transfer after inquiring about the drop in GI's revenue. The King Street shop had the largest net income of

11

GI's three locations. The jury found in Roland's favor on the fraudulent non-disclosure, unjust enrichment, and tradename infringement claims. Given the record evidence, the jury should have been allowed to consider awarding punitive damages.

### 3. Prejudgment Interest

Roland contends that he should have been awarded prejudgment interest because Robert misappropriated the King Street shop from December 31, 2016, and more than three years had passed by the time the circuit court entered Judgment on August 26, 2020. The grant or denial of prejudgment interest is reviewed for abuse of discretion. Tri-S Corp. v. W. World Ins. Co., 110 Hawaiʻi 473, 489, 135 P.3d 82, 98 (2006).

HRS § 636-16 authorizes the circuit court, in its discretion, to correct injustice when a judgment is delayed for a long period of time for any reason. Metcalf v. Voluntary Emps.' Benefit Ass'n of Hawaiʻi, 99 Hawaiʻi 53, 61, 52 P.3d 823, 831 (2002). It is not an abuse of discretion to deny prejudgment interest where there is no evidence that the defendant's conduct unduly delayed the proceedings or if there has been no extraordinary delay in entry of judgment. Amfac, Inc. v. Waikiki Beachcomber Inv. Co., 74 Haw. 85, 137, 839 P.2d 10, 36 (1992); Page v. Domino's Pizza, Inc., 80 Hawaiʻi 204, 209, 908 P.2d 552, 557 (App. 1995). Here, less than three years had passed from the time Roland filed his FAC on June 19, 2018, and the entry of Judgment on August 26, 2020. The record does not reflect that this constituted undue delay or abuse of the circuit court's discretion.

### 4. Attorneys' Fees and Costs

Relying on HRS §§ 607-14 and 414D-90(e), Roland requested that the circuit court award him attorney's fees and costs in the amount of $204,303.68 – twenty-five percent of his $817,214.72 pre-suit demand from Robert – because he

successfully defended the counterclaim.  On appeal, Roland additionally cites HRS § 414-242, which permits a corporation to indemnify directors that are made a party to a lawsuit under certain circumstances.  The grant or denial of attorneys' fees and costs is reviewed for abuse of discretion.  <u>Enoka v. AIG Hawaii Ins. Co.</u>, 109 Hawaiʻi 537, 544, 128 P.3d 850, 857 (2006).

The circuit court did not abuse its discretion in denying Roland's claim for fees.  The record reflects that Roland did not submit an itemized fees request.  Counsel stated that he was "currently preparing their supporting information for an award of attorney's fees, which is rather voluminous." (Underscoring omitted).  Nothing further was submitted. "Parties seeking attorneys' fees bear the burden of demonstrating the fees requested are reasonable."  <u>Gurrobat v. HTH Corp.</u>, 135 Hawaiʻi 128, 135, 346 P.3d 197, 204 (2015). Without an itemization, the circuit court did not abuse its discretion in denying Roland attorney's fees.

However, the failure to award Roland costs, without explanation, is an abuse of discretion.  <u>Wong v. Takeuchi</u>, 88 Hawaiʻi 46, 52, 961 P.2d 611, 617 (1998), held that reducing costs without explanation is an abuse of discretion unless the reason is plain from the record.  Due to the Covid-19 pandemic, the circuit court did not hold a hearing on Roland's fees and costs request, and its order does not explain the reason for denial.  Roland requested $4,335.70 in costs, consisting of $3,229.82 in copying costs, $31.41 for court reporter transcript(s), $515.00 for filing fees, $25.42 for postage, $188.50 for sheriff fees, and $345.55 for video equipment rental.  A party requesting an award of costs must provide a receipt of proof of the amount for all outside or third-party costs.  <u>Tortorello v. Tortorello</u>, 113 Hawaiʻi 432, 444-45, 153 P.3d 1117, 1129-30 (2007).  It appears that the copying

costs and postage were in-house, not outside expenses, and that the amounts incurred by Roland were verified through counsel's declaration.

The circuit court erred in denying Roland's motion for costs without explanation.

**5. Preferential Dividend**

Roland contends that the circuit court erred in denying him a preferential dividend.  A preferential dividend is an equitable remedy.

> The relief granted by a court in equity is discretionary and will not be overturned on review unless the circuit court abused its discretion by issuing a decision that clearly exceeds the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of the appellant.

Aickin v. Ocean View Invs. Co., 84 Hawaiʻi 447, 453, 935 P.2d 992, 998 (1997) (cleaned up).

On this record, we conclude that Roland fails to establish an abuse of discretion by the denial of a preferential dividend.  The jury found that Roland breached duties owed pursuant to the bylaws and as treasurer, and the circuit court found that Roland refused Robert's requests for information and the breakdown in communications between the brothers led to the lawsuit.  Given Roland's own culpability, the circuit court did not abuse its discretion in denying him the equitable remedy of a preferential dividend.

**B. Robert's Points of Error**

**1. Denial of Renewed Motion for Judgment as a Matter of Law on Roland's Claims**

A trial court's rulings on motions for JMOL are reviewed *de novo*.  Est. of Herbert, 90 Hawaiʻi at 454, 979 P.2d at 50.  "Verdicts based on conflicting evidence will not be set aside where there is substantial evidence to support the jury's findings."  Nelson v. Univ. of Hawaii, 97 Hawaiʻi 376, 393, 38

P.3d 95, 112 (2001) (citation omitted). We conclude that the circuit court was not wrong in denying Robert's motion:

(1) Robert contends that there is insufficient evidence to establish that he failed to disclose, and profited from, the transfer of the King Street shop. To prevail on a fraudulent non-disclosure claim, Roland was required to establish by clear and convincing evidence that Robert failed to disclose a material fact that justifiably induced Roland to act or refrain from acting in a business transaction that resulted in damages. See Santiago v. Tanaka, 137 Hawaiʻi 137, 149, 366 P.3d 612, 624 (2016) (citing Restatement (Second) of Torts § 551 (Am. Law Inst. 1977)). A party who enters into a contract as a result of a fraudulent misrepresentation may have the contract rescinded or seek damages for the fraud. Exotics Hawaii-Kona, Inc. v. E.I. Du Pont De Nemours & Co., 116 Hawaiʻi 277, 290-91, 172 P.3d 1021, 1034-35 (2007). The damages awarded on a fraud claim should "put the plaintiff in the position he would have been had he not been defrauded." Id. at 298, 172 P.3d at 1042 (citation omitted).

The record reflects that the testimony of Roland and Larry Anderson support the breach of fiduciary and punitive damages claims. Moreover, the record further reflects that Robert prepared and signed a purchase agreement through which GI, without Roland's knowledge, purportedly sold the King Street shop to GG for $7,260. Robert did not inform Roland of the King Street shop transfer. And the day after Roland sent Robert a proposal for the dissolution of GI, Robert removed Roland as an authorized signatory on GI checks.

Eddy Kemp, Robert's expert, testified that the King Street shop was not performing as well as the other locations. However, Robert's tax returns, which were introduced into evidence, show that GG reported a loss of $14,470 in 2016 (the

15

year prior to the transfer of the King Street shop), followed by a profit of $83,658 in 2017, and $4,473 in 2018.  Given the mixed evidence, we conclude that the jury could choose to credit Roland's evidence that Robert benefitted from the undisclosed transfer of the King Street shop.

(2) Robert contends that there was insufficient evidence to support the jury's finding that Robert unjustly enriched himself at the expense of GI.  To prevail on a claim for unjust enrichment, the plaintiff must prove that he conferred a benefit on the defendant and it would be unjust for the defendant to keep the benefit.  See Durette v. Aloha Plastic Recycling, Inc., 105 Hawaiʻi 490, 504, 100 P.3d 60, 74 (2004) (citation omitted).

Robert's contention lacks merit.  In addition to the evidence suggesting that Robert and GG benefitted from GG's acquisition of the King Street shop, Roland introduced evidence that GI employees were being used to take delivery of parts for GG at GI's Waipahu shop.  Moreover, the record reflects that Robert directed that the Kalihi Shop, which was solely owned by Robert pursuant to a 2014 settlement, would be included on advertisements with Hawaiian Telcom at GI's expense.  Robert also re-registered to himself the tradename "Exhaust Systems Hawaii," which had been used by all four shops and had originally been registered to GI in December 1994, and demanded a license to continue using the trade name at no cost.  We conclude that the record reflects substantial evidence for the jury to find that GG was unjustly enriched by the use of GI's assets.

(3) Robert and the business entities contend that they were entitled to JMOL on the trade name infringement claim because the "Exhaust System Hawaii" trade name is generic, there was no evidence of customer confusion resulting from the alleged

infringement, the damages awarded were speculative, and the remedy for infringement is a fine and injunctive relief, not damages.

"In Hawaii, the registration and protection of trademarks, prints, labels and trade names is governed by HRS chapter 482 (1976, as amended)." Carrington v. Sears, Roebuck & Co., 5 Haw. App. 194, 197-98, 683 P.2d 1220, 1225 (App. 1984). To prevail on the trade name infringement claim, Roland needed to show that Robert and his business entities used their mark or label in a manner likely to confuse consumers. "A likelihood of confusion exists when consumers confronted with products or services bearing one label or mark would be likely to assume that the source of the products or services is the same as or associated with the source of a different product or service identified by a similar mark." Id. at 199, 683 P.2d at 1225-26 (citation omitted). Judgment for the defendant may be granted only if there is no likelihood of confusion after examining the evidence in light of the following factors: (1) similarity of the marks; (2) similarity of the goods; (3) relationship between the parties' channels of trade; (4) relationship between the parties' advertising; (5) class of prospective purchasers of the products; (6) evidence of actual confusion; (7) defendant's intent in adopting its mark; and (8) strength of plaintiff's mark. Id. at 199-200, 683 P.2d at 1225-26 (citation omitted).

The record reflects that Robert registered "Exhaust Systems Hawaii" as a trade name for GI in December 1994. Robert re-registered the "Exhaust Systems Hawaii" trade name to himself in 2019. Roland testified to receiving an invoice from Cutter Dodge for the Kalihi shop, and that he was concerned people would not know that GI and GG were two different companies because all of the business entities were using "Exhaust Systems Hawaii." Moreover, Robert's own expert, Eddy Kemp, acknowledged

based on the company's website that, "it would appear that Exhaust Systems Hawaii and Exhaust Systems Hawaii Kalihi Kai are one entity, as are all [the] shops are listed. . . . There is nothing on the website to delineate the two different ownership groups and practice."  On this record, we determine there is substantial evidence to support the jury's finding that Robert infringed on the "Exhaust Systems Hawaii" trade name.

We affirm the circuit court's order denying Robert's Renewed Motion for Judgment as a Matter of Law.

## 2. **Withdrawal of Corporate Dissolution Claim**

We conclude that the circuit court did not err in allowing Roland to withdraw his claim for corporate dissolution of GI.  A court should deny a motion for voluntary dismissal if the defendant will be seriously prejudiced, taking into account the expense and inconvenience to the defendant.  Tagupa v. VIPDesk, 135 Hawai'i 468, 475, 353 P.3d 1010, 1017 (2015) (citations omitted).  Alternatively, if the defendant will be prejudiced, the court may impose terms and conditions on the dismissal, to ensure that substantial justice is accorded to both parties, which may include requiring the plaintiff to pay the defendant's fees and costs or other conditions.  Id. at 476-77, 353 P.3d at 1018-19 (citations omitted).

In moving for dismissal of his claim for dissolution, Roland claimed financial hardship, which was worsened by the Covid-19 pandemic, and expressed his desire to wait on dissolution for values to stabilize.  Robert contended that he had already endured three years of litigation, would be prejudiced by additional delays, and, alternatively, that dismissal should be with prejudice with Roland ordered to pay a reasonable portion of fees and costs.  On appeal, Robert additionally contends that the circuit court, by granting the

dismissal, required him to remain in a business relationship that both he and Roland agree should end.[7]

On this record, we conclude that the circuit court did not abuse its discretion in granting Roland's request to withdraw his corporate dissolution claim without prejudice. In its ruling, the circuit court expressly noted its concern regarding the impact that dissolution would have "in the current economic situation," not only on Roland and Robert, but on company employees. Two GI employees who had testified during trial voiced concerns about retaining their jobs.

We affirm the circuit court's order allowing Roland to withdraw his corporate dissolution claim.

### 3. Attorneys' Fees and Costs

The grant or denial of attorneys' fees and costs is reviewed for abuse of discretion. Enoka, 109 Hawaiʻi at 544, 128 P.3d at 857. We conclude that the circuit court did not err in denying Robert and the business entities' request for attorneys' fees and costs.

Robert claims that he was entitled to an award of attorneys' fees and costs pursuant to HRS §§ 607-14[8] and 414-

---

[7]   We note that Robert did not include a claim for corporate dissolution in his counterclaim.

[8]   HRS § 607-14 (2016), which authorizes attorneys' fees in actions in the nature of assumpsit, etc., provides, in relevant part,

> In all the courts, in all actions in the nature of assumpsit and in all actions on a promissory note or other contract in writing that provides for an attorney's fee, there shall be taxed as attorneys' fees, to be paid by the losing party and to be included in the sum for which execution may issue, a fee that the court determines to be reasonable; provided that the attorney representing the prevailing party shall submit to the court an affidavit stating the amount of time the attorney spent on the action and the amount of time the attorney is likely to spend to obtain a final written judgment, or, if the fee is not based on an hourly rate, the amount of the agreed upon fee. The court shall then tax attorneys' fees, which the court

(continued . . .)

177(2) and (3).[9]  Robert claims that he was the prevailing party because Roland recovered on only three of the fifteen claims in the FAC, and was awarded damages of only $142,000 even though he claimed damages of $9 million during discovery.  Robert also claims that he prevailed on his counterclaim because the circuit court and the jury agreed that Roland breached his fiduciary duties.

The circuit court did not abuse its discretion in denying Robert's and the business entities' fees motion because *Roland* was the prevailing party.  We affirm the circuit court's order denying Robert's motion for attorney's fees.

### III. Conclusion

For the foregoing reasons, we vacate the Judgment in part, and remand for (1) trial on Roland's claims of breach of fiduciary duty based on kinship, UDAP, and punitive damages claims, and determination of damages, if any, (2) consideration

---

determines to be reasonable, to be paid by the losing party; provided that this amount shall not exceed twenty-five per cent of the judgment.

[9]     HRS § 414-177 (2004) authorizes that a court "may" require payment of attorneys' fees upon the termination of a derivative proceeding:

§**414-177 Payment of expenses.**  On termination of the derivative proceeding the court may:

. . . .

(2)     Order the plaintiff to pay any defendant's reasonable expenses (including counsel fees) incurred in defending the proceeding if it finds that the proceeding was commenced or maintained without reasonable cause or for an improper purpose; or

(3)     Order a party to pay an opposing party's reasonable expenses (including counsel fees) incurred because of the filing of a pleading, motion, or other paper, if it finds that the pleading, motion, or other paper was not well-grounded in fact, after reasonable inquiry, or warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law and was interposed for an improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of litigation.

of Roland's request for costs, and (3) for further proceedings consistent with this memorandum opinion.

DATED: Honolulu, Hawaiʻi, August 7, 2024.

On the briefs:

Fred Paul Benco,
for Plaintiff/Counterclaim
Defendant-Appellant/Cross-
Appellee.

John D. Ferry III,
for Defendants-
Counterclaimant-Appellees/
Cross-Appellants.

/s/ Katherine G. Leonard
Acting Chief Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Kimberly T. Guidry
Associate Judge